No. 74,216

CITY OF WICHITA, KANSAS, *Appellant*, v. PUBLIC EMPLOYEE RELATIONS BOARD of the Kansas Department of Human Resources and TEAMSTERS UNION LOCAL 795, *Appellees*.

(913 P.2d 137)

Opinion filed March 15, 1996.

*Robert D. Overman*, of Martin, Churchill, Overman, Hill & Cole, Chartered, of Wichita, argued the cause, and *Anthony J. Powell* and *W. Stanley Churchill*, of the same firm, and *Joe Allen Lang*, assistant city attorney, and *Gary E. Rebenstorf*, city attorney, were with him on the briefs for appellant.

*Donald R. Doesken*, of Kansas Department of Human Resources, argued the cause and was on the brief for appellee Public Employee Relations Board.

*Richard H. Seaton, Jr.*, of Wichita, argued the cause and was on the brief for appellee Teamsters Union Local 795.

The opinion of the court was delivered by

MCFARLAND, C.J.: Teamsters Union Local 795 (Union) filed a petition with the Public Employee Relations Board (PERB) seeking to become the exclusive bargaining representative for certain safety officers working at the Wichita Mid-Continent Airport. The petition alleged that the City of Wichita (City) was the employer of such officers. The respondent City filed a motion to dismiss the petition on the ground the officers were the employees of the

Wichita Airport Authority (Authority). Authority is not subject to the Public Employer-Employee Relations Act (PEERA), K.S.A. 75-4321 *et seq.*, whereas City is subject to PEERA.

The adversaries on the motion to dismiss were Union and City, and each introduced extensive evidence in support of their respective positions. The presiding officer for PERB, acting in a quasi-judicial capacity, heard the evidence and made findings of fact and conclusions of law encompassing 45 pages. The presiding officer's key holdings were: (1) City and Authority were each a "public agency or employer" as defined by K.S.A. 75-4322(f); (2) City and Authority each exerted control over varying aspects of the employment relationship and were the "joint employers" of the safety officers, with City "having the dominant role in setting the conditions of employment" and being "fully capable of bargaining effectively with the Teamsters, [sufficient] to satisfy an employer's obligations under PEERA"; and (3) PERB, having jurisdiction over City, could proceed with the petitioned-for unit determination.

City then filed a petition for judicial review pursuant to K.S.A. 77-607. The district court held that: (1) PERB's findings of fact were appropriate and supported by the evidence; (2) PERB's conclusion as to City and Authority being joint employers was erroneous; and (3) the case should be remanded to PERB for further consideration.

An appeal and cross-appeal were filed. We held that (1) the district court's order of remand to PERB was invalid as it was not premised on any of the grounds set forth in K.S.A. 77-619(b); (2) the order sought to be appealed from was not a final order; and (3) the appeal and cross-appeal must be dismissed. *City of Wichita v. PERB*, No. 70,317, unpublished opinion filed October 28, 1994.

The district court then entered a final order in which it (1) held that City and Authority were not separate entities as held by PERB but, rather, constituted a single employer subject to PEERA and (2) affirmed PERB's determination that it had jurisdiction to determine the petitioned-for unit determination. City appeals therefrom.

## SCOPE OF REVIEW

Preliminarily, the scope of review must be determined.

The Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KAJR) applies to all agencies and all proceedings not specifically exempted by statute from the provisions of the act. K.S.A. 77-603(a). PERB is not a statutorily exempt agency. *See* K.S.A. 77-603(c).

The scope of review under KAJR is set out in K.S.A. 77-621(c) as follows:

"The court shall grant relief only if it determines any one or more of the following:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

"A rebuttable presumption of validity attaches to all actions of an administrative agency and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's action." *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 961, 811 P.2d 876 (1991). See *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 430-31, 885 P.2d 1233 (1994); *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, 840-42, 877 P.2d 437 (1994).

Arbitrary or capricious conduct may be shown where an administrative order is not supported by substantial evidence. Substantial evidence is evidence possessing both relevance and substance that furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989).

The interpretation of a statute by an agency charged with its enforcement is normally entitled to a great deal of judicial deference. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 809, 667 P.2d 306 (1983). "[I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review." *State Dept. of SRS v. Public Employee Relations Board,* 249 Kan. 163, 166, 815 P.2d 66 (1991). In reviewing questions of law, however, a court may substitute its judgment for that of the agency. *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied,* 229 Kan. 671 (1981).

Here, City asserts that the district court did not give the required deference to PERB's findings of fact and its decision was therefore erroneous. City argues that because the hearing officer found that both City and Authority were separate employers, those factual findings must be presumed valid on review.

The legal profession is frequently criticized for its perceived ability to burden, complicate, and otherwise drag out relatively simple controversies ad infinitum. This case and its procedural history are, unfortunately, illustrative of the truth behind that criticism. On October 18, 1991, Union petitioned PERB for a unit determination and election under PEERA as to the safety officers at the airport involved herein. Authority, which had not elected to come under PEERA, operates the airport. Union contended that City, which has elected to come under PEERA, had sufficient control over the safety officers to be considered their employer. City denied it should be considered the employer. This is really the only issue that has ever been in this case. It sounds simple, but it has not proven to be so. This is even the second time the case has been before us. Like the Energizer Bunny, this case just keeps going and going and going. The petition may have been filed in 1991, but all that has been litigated is the threshold question of whether PERB has jurisdiction to determine the petition.

PERB's order contains 105 highly detailed findings of fact covering every conceivable aspect of the relationships among City, Authority, and the safety officers. These findings have never been challenged by the parties and were approved by the district court. As noted by PERB in its order, City and Union each presented

uncontroverted evidence of particular facets of the relationship which supported their respective claims as to City's control or lack thereof. Little would be gained from their inclusion herein in toto.

Prior to 1975, the Wichita Mid-Continent Airport was a component of the Park Commission of the City of Wichita. On September 5, 1975, pursuant to K.S.A. 3-162, City established the Wichita Airport Authority by resolution.

The PERB hearing officer summarized his findings relative to City's degree of control as follows:

"The record clearly demonstrates that the City effectively and actively participates in the control of labor relations and working conditions of employees at the Airport Authority. The City, through Policy 8, reserved to itself the authority to approve the By-laws of the Airport Authority . . . ; to approve and change the proposed budget of the Airport Authority . . . ; to establish position descriptions, positions and salaries for employees at the Airport Authority . . . ; to require inclusion of the Airport Authority employees in the Wichita Employees' Retirement System . . . ; to require adherence by the Airport Authority to Administrative Regulations . . . ; to set personnel policy through the Airport Authority use of the City Administrative Personnel Policy and Procedure Manual, for example the grievance procedure and the layoff procedures . . . ; and to set benefits to be received by the Airport [Authority employees] by tying them to the benefits received by City employees, e.g. paid holidays, computation of sick leave, vacation leave and well days. . . .

"Additional indicia of control by the City of labor relations matters can be found in the Airport [Authority's] inclusion in the self-insured fund administered by the City for purposes of providing Workers Compensation protection for which the City establishes procedures to be followed following an injury and the approved physicians . . . ; Airport Authority employees are protected by the Wichita merit system and are represented on an Employees' Council established by the City . . . ; and the ability of Airport Authority employees to transfer to City positions without prior approval of the Airport Authority, without loss of benefits, have their years of service calculated to include Airport Authority and City employment to determine seniority, vesting, and qualification for awards. . . .

"The authority of the City to appoint and remove a majority of the members of the Airport Authority is of special significance."

The hearing officer also found that the safety officers' W-2 forms show the employer to be City. The forms filed relative to the State Employment Security Fund also show City as the employer.

Both PERB and the district court concluded that City had sufficient control to afford meaningful negotiations under PEERA.

Clearly, each was concerned that City not be permitted to escape PEERA as to some of the employees it controlled, while conducting negotiations under PEERA as to others. Both PERB and the district court apparently believed there had to be some label applied to the relationships herein that had previously been utilized under the National Labor Relations Act (NLRA). This is where the joint employer-single employer dichotomy crept into this case. The only real difference between the hearing officer's findings and conclusions and those of the district court is which label should be applied—they agree on the result, that is, that City should be required to negotiate under PEERA. The difference of opinion is more of form than of substance.

K.S.A. 75-4321(a)(4) declares the policy behind PEERA:

"[T]here neither is, nor can be, an analogy of statuses between public employees and private employees, in fact or law, because of inherent differences in the employment relationship arising out of the unique fact that the public employer was established by and is run for the benefit of all the people and its authority derives not from contract nor the profit motive inherent in the principle of free private enterprise, but from the constitution, statutes, civil service rules, regulations and resolutions."

In *National Education Association v. Board of Education*, 212 Kan. 741, 512 P.2d 426 (1973), this court cautioned against the use of federal decisions in public employment labor disputes. We noted the similarities and differences between collective negotiations by public employees under the Kansas Professional Negotiations Act, K.S.A. 72-5413 *et seq.*, and collective bargaining in the private sector under the NLRA, stating:

"[W]e recognize the differences . . . between collective negotiations by public employees and 'collective bargaining' as it is established in the private sector, in particular by the [NLRA]. Because of such differences federal decisions cannot be regarded as controlling precedent, although some may have value in areas where the language and philosophy of the acts are analogous. See K.S.A. 1972 Supp. 75-4333(c), expressing this policy with respect to the [PEERA]." 212 Kan. at 749.

The facts herein illustrate the wisdom of not relying on NLRA cases in deciding PEERA issues. Both the hearing officer and the district court struggled to try and make the single employer or joint

employer theory fit. Neither of these theories is a comfortable fit because they are NLRA concepts. Highly summarized, the single employer concept involves piercing the corporate veil, for labor relations purposes, of separate but interrelated corporations. See *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739 (7th Cir. 1989). The joint employer concept has been applied when two separate employers, by contractual agreement, each have control over the employees in question. The concept is akin to statutory employee determinations in workers compensation proceedings. See *N.L.R.B. v. Browning-Ferris Industries, Etc.*, 691 F.2d 1117 (3d Cir. 1982). Resort to either of these NLRA concepts is unnecessary for resolution of the issue herein.

We have before us uncontroverted findings of fact establishing City's control over significant portions of the safety officers' conditions of employment. As PERB has succinctly stated in its brief:

"Finally, the fact that the City does not have complete say over all terms and conditions of employment does not preclude effective bargaining over those matters which the City does control. See *S.S. Kresge Company v. N.L.R.B.*, [416 F.2d 1225, 1229-32 (6th Cir. 1969)]; *Herbert Harvey, Inc. v. N.L.R.B.*, [424 F.2d 770, 775-78 (D.C. Cir. 1969)]; and *Gallenkamp Stores Co. v. N.L.R.B.*, [402 F.2d 525, 529 (9th Cir. 1968)].

"The City may not be able to bargain over job assignments or work rules. However, the City clearly has control over salary rates and employee fringe benefits, and can bargain effectively with airport authority employees over those matters."

We agree. City elected to come under PEERA, pursuant to K.S.A. 75-4321(c). It has also elected to retain control over many aspects of the safety officer positions, even after establishing the Airport Authority.

K.S.A. 75-4321(b) provides:

"Subject to the provisions of subsection (c), it is the purpose of this act to obligate public agencies, public employees and their representatives to enter into discussions with affirmative willingness to resolve grievances and disputes relating to conditions of employment, acting within the framework of law. It is also the purpose of this act to promote the improvement of employer-employee relations within the various public agencies of the state and its political subdivisions by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice, or to refrain from joining, and be represented

by such organizations in their employment relations and dealings with public agencies."

We find no error in the agency determination, which was affirmed by the district court, that PERB has jurisdiction to proceed under PEERA with the petition. Such result is appropriate under the unique facts herein and the purposes of PEERA.

The judgment is affirmed.

SIX, J., concurring in result.