(195 P.3d 259)
No. 99,021

FORT HAYS STATE UNIVERSITY, *Appellant/Cross-appellee*, v. FORT HAYS STATE UNIVERSITY CHAPTER, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *Appellee/Cross-appellant*, and THE KANSAS PUBLIC EMPLOYEE RELATIONS BOARD, *Appellee/ Cross-appellee*.

FORT HAYS STATE UNIVERSITY CHAPTER, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *Plaintiff*, v. FORT HAYS STATE UNIVERSITY and THE KANSAS PUBLIC EMPLOYEE RELATIONS BOARD, *Defendants*.

716

Opinion filed November 7, 2008.

*Wm. Scott Hesse*, assistant attorney general, and *Todd Powell*, general counsel, Fort Hays State University, for appellant/cross-appellee.

*Lawrence G. Rebman*, of Rebman & Associates, LLC, of Kansas City, Missouri, for appellee/cross-appellant Fort Hays State University Chapter, the American Association of University Professors.

*Darren E. Root*, staff attorney, Kansas Department of Labor, for appellee/cross-appellee Kansas Public Employees Relations Board.

Before GREENE, P.J., GREEN and CAPLINGER, JJ.

GREENE, J.: Fort Hays State University (FHSU) appeals the district court's order upholding an award of the Kansas Public Employee Relations Board (PERB) to FHSU's former employee, Frank Gaskill, in the amount of $12,772.80 in damages as a result of a prohibited practice complaint made by the Fort Hays State University Chapter of the American Association of University Professors (AAUP). FHSU principally argues that PERB had no authority to award monetary damages to Gaskill under these circumstances. AAUP cross-appeals, arguing that PERB's reduction in Gaskill's damages from the $142,013.62 requested was not supported by the evidence or was otherwise arbitrary, capricious, and unreasonable. On our own motion, this court raised a question of

our own jurisdiction because of a purported untimely filing by AAUP of its motion for reconsideration at the agency, and we requested supplemental briefs on the issue.

We conclude that the doctrine of unique circumstances is applicable, thus vesting jurisdiction in the agency and validating judicial jurisdiction, and we reverse the award of monetary damages to Gaskill as an unauthorized agency action.

### Factual and Procedural Overview

This matter is before the court after a long and tortured procedural history through administrative and judicial appeals. The gravamen of this action is that FHSU failed to accord to AAUP its representational status of Gaskill in a grievance process initiated by Gaskill after FHSU decided not to extend a contract to Gaskill for the 2001-02 academic year.

This appeal was preceded, however, by an informal grievance filed by Gaskill that led to the termination decision being upheld. Rather than exhaust his administrative remedies by perfecting a formal grievance, Gaskill filed an action in district court for breach of contract and wrongful termination of employment.

FHSU moved to dismiss this suit, alleging a failure to exhaust administrative remedies. The district court granted this motion, and this court affirmed the dismissal in *Gaskill v. Ft. Hays State Univ.*, 31 Kan. App. 2d 544, 546, 70 P.3d 693 (2003), reiterating that "the [Kansas Judicial Review Act] KJRA is the exclusive remedy for professors claiming either wrongful termination or breach of contract against state educational institutions."

Prior to the filing of Gaskill's civil action in district court, AAUP filed a prohibited practice complaint with PERB, alleging that FHSU had engaged in ongoing violations of the Public Employer-Employee Relations Act (PEERA), K.S.A. 75-4321 *et seq.*, by failing and refusing "to accord to the charging party its representational status with regard to representation of Professor Frank Gaskill," by failing and refusing "to provide information which the charging party needs in order to properly represent Dr. Gaskill," and by unilaterally changing "terms and conditions of employment

as they applied to Dr. Gaskill without meeting its obligation to first bargain in good faith with the charging party."

After resolution of preliminary motions, an administrative law judge (ALJ) held an evidentiary hearing on the merits of AAUP's complaint. The ALJ ultimately issued a 36-page initial order encompassing findings and conclusions detailing FHSU's violations of K.S.A. 75-4333(b), awarding Gaskill $142,013.62 in damages, and ordering FHSU to cease and desist from such violations.

FHSU filed a petition for review of the initial order with PERB, which ultimately adopted the findings and conclusions of the ALJ and affirmed the relief granted, except the award of monetary damages to Gaskill. PERB characterized the award of damages to Gaskill as moot and held that Gaskill's breach of contract action was not before it. Critical to our jurisdiction, AAUP then filed its motion to reconsider this final order 1 day late but faxed a copy to the agency within the deadline. The motion to reconsider was denied.

AAUP then filed in district court its petition for judicial review of the final order, arguing that PERB's decision to reverse the monetary damage award was improper for a variety of reasons. The district court remanded the matter to PERB for further proceedings as to remedy, concluding that PERB's decision reversing the monetary award was devoid of facts supported by the record and unsupported by policy. On remand PERB awarded damages to Gaskill but reduced his requested award of $142,013.62 to $12,772.80.

FHSU then filed its second petition for judicial review, contending the damage award was erroneous, and AAUP filed its own petition for judicial review, contending the monetary award should be modified to "reinstate" the entire $142,013.62. On this second judicial review, the district court essentially affirmed PERB's final order awarding Gaskill $12,772.80. Both parties then filed respective notices of appeal.

After the appeals were docketed in this court, we issued a show cause order directing the parties to show cause why the appeal should not be dismissed for lack of appellate jurisdiction due to an apparent belated filing by AAUP of its motion to reconsider

PERB's final order. The parties' responses led this court to order supplemental briefing on the issue of jurisdiction.

### *Does this Court Have Jurisdiction to Consider this Appeal, Given Belated Filing of a Jurisdictional Motion to Reconsider with the Agency?*

We must initially address the jurisdiction issue framed by AAUP's apparent belated filing of a motion to reconsider at PERB. FHSU argues that the timely fax-filed motion to reconsider was not authorized by the agency's regulations, and the only such motion that was properly filed by AAUP was filed 1 day beyond the statutory 15-day deadline, thus depriving the agency of its jurisdiction to act on the motion and requiring any petition for judicial review of the final order to be filed within 30 days after service of that order. Because the petition for judicial review was not filed for 5 months following the final order, FHSU argues that all agency and judicial actions following the untimely motion for reconsideration should be deemed null and void. Obviously, our jurisdiction to address the merits of this appeal depends on the propriety of the fax-filing of AAUP's motion for reconsideration.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 774, 148 P.3d 538 (2006). An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, it is the duty of the appellate court to dismiss the appeal. *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007).

Here, PERB served its first final order (affirming the presiding officer's initial order except for reversing the monetary damages awarded to Gaskill) by mail on August 18, 2004. Adding 3 extra days because the order was served by mail (see K.S.A. 77-531), 18 days following this date was Sunday, September 5, 2004. Because of the Labor Day weekend that year, the deadline would have been extended until Tuesday, September 7, 2004. On September 7, 2004, AAUP faxed a motion to reconsider to PERB, and PERB stamped it "RECEIVED" the same day. AAUP also sent PERB a copy via the mail that was stamped "RECEIVED" by PERB on

September 8, 2004. Thus, only the faxed copy of the motion was timely received by PERB.

AAUP argues that it fax-filed the motion for reconsideration because its counsel had a good-faith belief that fax filings were acceptable.

"Before faxing the Request for Reconsideration on September 7, 2004, Counsel for [AAUP] has fax filed pleadings with the PERB for approximately 8 years and has been informed that this is an acceptable method of filing pleadings. Prior to faxing the request on September 7, 2004, Counsel contacted PERB's Office Manager, Ms. Sharon Tunstall and verified that it would be acceptable to fax the Request for Reconsideration . . . . Based on these forgoing facts, the acceptance of fax filing is based upon the expressed authorization and or waiver by the PERB."

Fax filing is not within the acceptable means for service of pleadings with PERB according to its own regulations. K.A.R. 84-2-1 sets forth the requirements for service of pleadings for PERB and provides that "[t]he moving party and respondent in any action shall be required to file the original and five copies of any pleadings with the board or its designee *either in person or by certified mail.*" (Emphasis added.) K.A.R. 84-2-1(b). Despite this requirement, PERB apparently accepted, considered, and denied AAUP's faxed motion to reconsider on its merits, rather than rejecting it as not properly filed and rejecting the mailed copy as not timely filed. AAUP argues that PERB should be deemed to have waived its specific service regulations. Indeed, we note that PERB's regulations are prefaced with a general waiver provision:

"Waiver. In the event that the application of these rules would not be feasible or would work an injustice, the rules may be waived or suspended by the board at any time or in any proceeding unless such action would deprive a party of substantial rights." K.A.R. 84-1-2(c).

## Does K.S.A. 60-205 Apply to Permit Fax Filing?

AAUP initially argues that K.S.A. 60-205(e) applies and allows for fax filing in administrative matters. This statutory subsection provides:

"*Filing with the court defined.* The filing of pleadings and other papers with the court as required by this article shall be made by filing them with the clerk of the court. In accordance with K.S.A. 60-271 and amendments thereto and supreme court rules, pleadings and other papers may be filed by telefacsimile

communication."

AAUP's assertion that fax filing was valid here under K.S.A. 60-205(e) is unpersuasive. AAUP cites *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 106 P.3d 492 (2005), to support its assertion, but we do not find this case controlling or instructive.

First, *Pieren-Abbott* addresses the use of the Code of Civil Procedure to supplement the KJRA, rather than the Kansas Administrative Procedure Act (KAPA) and PERB regulation at issue here. 279 Kan. at 97. AAUP cites no case law showing that KAPA may be supplemented by the Code of Civil Procedure, and it should be noted that KJRA deals with *judicial* review, whereas KAPA deals with procedures to be employed by administrative agencies.

Second, *Pieren-Abbott* suggests that the Code of Civil Procedure may be used by the district court to supplement the KJRA if the Code provision is a logical necessity "that is not addressed within the KJRA." 279 Kan. at 97. Such supplementation is *not* warranted where the agency already has clear and specific rules. We hold that provisions of the KAPA do not supplement the procedural regulations of an agency in an area where those regulations already provide clear and specific guidance.

For these reasons, we reject AAUP's suggestion that K.S.A. 60-205(e) controls and permitted the fax filing of its motion for reconsideration.

## Does the Doctrine of Unique Circumstances Apply?

AAUP alternatively argues that we should invoke the doctrine of unique circumstances in order to save its fax filing.

The doctrine of unique circumstances is one of specific and limited application, and whether it applies is a question of law subject to de novo review. The doctrine generally applies to permit an untimely appeal in which the delayed filing resulted from (1) the appellant's good-faith and reasonable belief that the judicial action seemingly extending the time for filing was valid; (2) the perceived extension was for no more than 30 days and was made and entered prior to the expiration of the official appeal period; and (3) the appellant filed the appeal within the extension. *Finley v. Estate of*

*DeGrazio*, 285 Kan. 202, 207, 170 P.3d 407 (2007). Although the factual scenario here does not involve a request for an extension of time or judicial action extending the statutory time for appeal, our Supreme Court has previously applied the doctrine in the context of an untimely petition for reconsideration before an agency. See *In re Tax Appeal of Sumner County*, 261 Kan. 307, 316-17, 930 P.2d 1385 (1997).

Application of the doctrine depends upon such concepts as equity, the interests of justice, good faith, estoppel, and nonparty error. *Finley*, 285 Kan. at 209. Although our Supreme Court seems to have recognized in *Finley* some continued vitality of the doctrine, the court may have signaled some further restriction in its application by citing with apparent approval *Bowles v. Russell*, 551 U.S. 205, 214, 168 L. Ed. 2d 96, 127 S. Ct. 2360 (2007), where the United States Supreme Court declared "illegitimate" any application of the doctrine to jurisdictional deadlines. At a minimum, our Supreme Court held in *Finley* that the doctrine has application only where an untimely filing was the result of nonparty error, but where counsel has engaged in a reckless disregard for the facts in representations to a court, the doctrine may not be applied. 285 Kan. at 211-13.

PERB has itself created a problem for the parties and this court by its apparent encouragement of fax-filing without a corresponding change in its formal regulations. As cited above, the regulation in effect clearly restricts service of pleadings on the board to be made "either in person or by certified mail." K.A.R. 84-2-1(b). Given the formal regulation that clearly restricts service to methods that do *not* include fax-filing, should the reliance by AAUP counsel on both "long-standing practice" and verbal encouragement to the contrary be considered "nonparty error"?

We might view the situation differently if there had been no specific waiver provision in PERB's regulations. As also cited above, PERB regulations provide for waiver or suspension of its procedural rules where application "would not be feasible or would work an injustice." K.A.R. 84-1-2(c). Even if counsel for the AAUP had been familiar with the restrictive regulation as to service, it was not unreasonable for counsel to view the agency's encourage-

ment for fax filing as a waiver or suspension of that regulation in order to avoid an injustice to a filer making inquiry on the last day of the period for filing. Distinguishing counsel's conduct from that at issue in *Finley*, here there was no conduct of counsel that could be characterized as reckless or misleading.

Limiting the application of the doctrine to the precise circumstances defined by our Supreme Court, we believe the doctrine should be applied here because (1) the AAUP's fax filing appears to have been in good faith and based on a reasonable belief that the agency action encouraging or permitting such filing was valid based either on long-standing practice or an express waiver of the more restrictive regulation; (2) the perceived validity of this filing methodology did not extend the time for filing more than 30 days, and AAUP counsel was informed of the methodology prior to expiration of the period for a timely filing; and (3) AAUP effected the fax filing within the permissible period. See *Finley*, 285 Kan. at 207.

Moreover, we note that our Supreme Court applied the doctrine under very similar circumstances in *In re Tax Appeal of Sumner County*, 261 Kan. 307, 316-17, 930 P.2d 1385 (1997). The *Sumner County* case involved an agency advising parties of an erroneous period within which to file motions for reconsideration because the agency regulation was inconsistent with a revision in KAPA. Under these circumstances, the court held that reliance on the erroneous statement from the agency should not deprive a party of the right to an adjudication on the merits, even though there was an express statutory provision that should have been known by that party. See *Slayden v. Sixta*, 250 Kan. 23, 30, 825 P.2d 119 (1992).

We apply the doctrine of unique circumstances in holding that AAUP's fax filing of its motion for reconsideration was sufficient to vest jurisdiction on the agency and validate jurisdiction of both agency and judicial action thereafter.

### *Was PERB Authorized to Award Monetary Damages to a Nonparty Under These Circumstances?*

FHSU challenges the award of monetary damages to Gaskill on numerous grounds, but the essential question before us is whether

PERB may properly award monetary damages to a nonparty for breach of an employment contract or wrongful termination in order to remedy a prohibited practice under PEERA, where the nonparty's private cause of action seeking such damages has previously been dismissed for failure to exhaust administrative remedies in the exclusive forum for same. Although we recognize that the damages awarded were apparently intended to rectify or punish a prohibited practice, we cannot ignore the fact that they were measured by Gaskill's loss of his employment and awarded to him even though he was not a party to the proceeding.

## Do We Have Jurisdiction to Address This Issue?

Before we analyze the merits of FHSU's arguments, we should first note AAUP's cross-appeal challenge to our jurisdiction to consider them because FHSU failed to timely seek judicial review of PERB's first final order.

PERB's first final order determined that FHSU committed a prohibited practice, but reversed the presiding officer's damage award. As FHSU states, it ultimately appealed the prohibited practice finding, but only the damage issue. Because PERB's first final order vacated the damage award, FHSU had no "immediate and pecuniary" interest to justify an appeal of that issue at that time. It was only after PERB issued a damage award following remand from the district court that FHSU had the necessary interest to appeal.

It is well settled that a party has no right or obligation to appeal a judgment that is *not* adverse to its interests.

"Ordinarily a party cannot appeal from a judgment unless it has a particular interest therein and is aggrieved or prejudiced thereby. Ordinarily its interest must be immediate and pecuniary. [Citation omitted.] Appeals are not for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct errors injuriously affecting the appellant. [Citation omitted.]" *Blank v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984).

Thus, this court has jurisdiction to consider FHSU's appeal.

### Does PEERA Contemplate Awards to Employees of Monetary Damages on Contract Claims as the Measure of Damages for Prohibited Practice Violations?

Although there seems to be no dispute that there is no clear and express statutory authorization to award monetary damages to Gaskill, AAUP and PERB argue that the authority is clear based upon PEERA's broad language granting authority to PERB "as appropriate to effectuate the purposes and provisions of this act." K.S.A. 2007 Supp. 75-4323(e)(3). FHSU challenges such broad authority as insufficient to support the award of monetary damages where the statutory scheme contains no express provision authorizing such an award. The ultimate question framed requires that we interpret and apply statutes, so we exercise unlimited review. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

### Statutory Overview

We begin by examining the overall statutory structure and purpose of PEERA, as stated by the legislature.

"[I]t is the purpose of this act to obligate public agencies, public employees and their representatives to enter into discussions with affirmative willingness to resolve *grievances* and disputes relating to conditions of employment, acting within the framework of law. It is also the purpose of this act to promote the improvement of employer-employee relations within the various public agencies of the state and its political subdivisions by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice, or to refrain from joining, and be represented by such organizations in their employment relations and dealings with public agencies." (Emphasis added.) K.S.A. 75-4321.

The term "grievance" is defined for purposes of the Act as

"a statement of dissatisfaction by a public employee, supervisory employee, employee organization or public employer concerning interpretation of a memorandum of agreement or traditional work practice." K.S.A. 75-4322(u).

Our Supreme Court has characterized the purpose of PEERA as follows:

"The Kansas [PEERA], K.S.A. 75-4321 *et seq.*, is a hybrid, containing some characteristics of pure 'meet and confer' acts with other characteristics of 'collective bargaining.' It imposes upon both employer and employee representatives

the obligation to meet, confer and negotiate in good faith, with affirmative willingness to resolve grievances and disputes, and to endeavor to reach agreement on conditions of employment." *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, Syl. ¶ 1, 667 P.2d 306 (1983).

In addition to authority provided in other sections of the Act, K.S.A. 2007 Supp. 75-4323(e) expressly authorizes PERB (1) to establish procedures for the prevention of improper public employer and employee organization practices (K.S.A. 2007 Supp. 75-4323[e][1]); (2) to conduct of hearings and inquiries (K.S.A. 2007 Supp. 75-4323[e][2]); and (3) to "[m]ake, amend and rescind such rules and regulations, and exercise such other powers, as appropriate to effectuate the purposes and provisions of this act." K.S.A. 2007 Supp. 75-4323(e)(3). Additionally, the board is to intervene in the public employer-public employee relations of political subdivisions to the minimum extent possible to secure the objectives of the Act. K.S.A. 2007 Supp. 75-4323(f).

Prohibited practices are specifically defined at K.S.A. 75-4333, and any controversy concerning such practices may be submitted to PERB for hearing pursuant to KAPA. K.S.A. 75-4334(a). PERB's authority in connection with such controversies is defined as follows:

"The board shall either dismiss the complaint or determine that a prohibited practice has been or is being committed. If the board finds that the party accused has committed or is committing a prohibited practice, the board shall make findings as authorized by this act and shall file them in the proceedings." K.S.A. 75-4334(b).

The Act also provides that in the case of an attempt by a public employer to institute a lockout or by a public employee (or employee organization) to engage in a strike, "the aggrieved party is authorized to seek relief in district court in the manner provided" while proceedings remain pending before the board. K.S.A. 75-4334(d).

### Is This Award Contemplated by the Statutory Scheme?

Key to the statutory scheme is that neither party has identified any aspect of the Act authorizing an award of monetary damages in circumstances such as these. AAUP argues that PERB's author-

ity for such an award is implicit within K.S.A. 2007 Supp. 75-4323(e)(3), authorizing the exercise of "such other powers as appropriate to effectuate the purposes" of PEERA. We disagree for a host of reasons.

First, we believe the purposes of PEERA do *not* contemplate providing a forum for private causes of action sounding in contract and seeking monetary damages by or on behalf of a public employee against a public employer. The stated purposes of the Act are limited to fostering discussions as a vehicle to resolve grievances between public employees and employers, improving employee-employer relations within state agencies and subdivisions, and providing recognition of the right of public employees to be organized, or not, as they choose. Punishing a prohibited practice with an award to the affected employee measured by his or her breach of contract damages is simply outside of the stated purposes of the Act.

Second, we note that there is no contemplation by the Act, either express or implied, of PERB entertaining controversies where the gravamen is breach of contract or wrongful termination of the employee. In fact, PERB's jurisdiction is limited by K.S.A. 75-4334 to controversies concerning prohibited practices, and wrongful termination of an employment contract is not among the listed "prohibited practices" specified by K.S.A. 75-4333.

Third, PERB's authority in resolving controversies does not include an award of damages but rather is limited by statute to "[making] findings as authorized by this act and [filing] them in the proceedings." K.S.A. 75-4334(b). Had the legislature intended PERB to act as a forum for vindication of employee rights to damages upon a breach of employment contract, such authority could easily have been included in this or another provision of the Act. Once again, there is simply no apparent legislative contemplation for PERB to vindicate public employee contract rights through the award of monetary damages.

Fourth, we do not view PERB's award of monetary damages to a public employee in this context to be consistent with the legislative restriction for intervention "to the minimum extent possible to secure the objectives expressed in [the Act]." K.S.A. 2007 Supp.

75-4323(f). In fact, the award of monetary damages measured by wrongful termination of an employment contract is arguably the ultimate intervention in employee-employer relations, an intervention that cannot be squared with involvement "to the minimum extent possible."

Fifth, we are troubled that the measure of damages assessed against FHSU and the award to Gaskill serve to provide a remedy *not* for the AAUP, but for Gaskill himself, thus providing a remedy beyond the exclusive remedy available to him upon an exhaustion of his administrative remedies—judicial review pursuant to the KJRA. In Gaskill's prior appeal, our court was quite clear in holding that the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA) is the exclusive remedy for professors claiming either wrongful termination or breach of contract against state educational institutions. *Gaskill*, 31 Kan. App. 2d at 546.

And, finally, we are troubled by the lack of causal nexus between FHSU's prohibited practice violations and the award of damages based on Gaskill's loss of his employment. According to the hearing officer, prohibited practice violations by FHSU included (1) denial of AAUP of its right to represent Gaskill in the grievance process; and (2) refusal to allow Gaskill to proceed to the formal hearing process without first meeting and conferring with AAUP. Neither of these violations established that Gaskill should not have been discharged by FHSU, thus entitling him to monetary damages for his loss of employment.

The utter disconnect between the prohibited practice violation and the damage award to Gaskill is demonstrated by AAUP's brief on appeal that suggests the violation "caused damage to all members of the bargaining unit." While this may be true, we fail to appreciate why such widespread damage should be measured and awarded to Gaskill as if he would have prevailed in his breach of contract action. In fact, even if AAUP had been allowed to represent Gaskill and if there had been a proper meet and confer proceeding, this certainly would *not have* established that Gaskill was entitled to monetary damages based upon his loss of employment at FHSU. The award of monetary damages under these circum-

stances demonstrates that PERB acted in a manner beyond its statutory authority.

### Are Authorities Construing Similar State and Federal Acts Instructive Here?

To further support its position, PERB encourages us to consider concepts parallel to those in PEERA from the Kansas Professional Negotiations Act, K.S.A. 72-5413 *et seq.* (PNA), and the National Labor Relations Act (NLRA), 29 U.S.C. § 151 (2000) *et seq.*, and authorities construing same. The PNA is a public sector labor law, but the NLRA is applicable to private employment. See *City of Wichita v. Public Employee Relations Bd.*, 259 Kan. 628, 633, 913 P.2d 137 (1996).

PERB admits that PEERA requires "fundamental distinctions" between private and public employment to be recognized, and states that "no body of federal or state law applicable wholly or in part to private employment shall be regarded as binding or controlling precedent." See K.S.A. 75-4333(e). Our Supreme Court has been mindful of this restriction and has decided whether to apply NLRA concepts to PEERA depending on the issue presented. See *City of Wichita*, 259 Kan. at 633-34 (refusing to apply NLRA concepts of single employer and joint employer in deciding whether city was obligated to meet and confer with airport authority safety officers); but see *Kansas Ass'n of Public Employees v. Public Service Employees Union*, 218 Kan. 509, 517, 544 P.2d 1389 (1976) (applying federal NLRA decisions to a PEERA case involving representation elections as a "universally applicable" rule of "fundamental fair play").

PERB argues that PEERA and the NLRA are both remedial legislation "designed to promote harmonious relations between employers and their employees, and to assuage the harms resulting from labor strife." PERB recognizes, however, that the NLRA, unlike PEERA, *expressly provides the National Labor Relations Board with the authority to award the remedies of back pay and reinstatement*, a key distinction.

PERB then brings to our attention that our Supreme Court allowed a monetary remedy under the PNA in *U.S.D. No. 279 v.*

*Secretary of Kansas Dept. Of Human Resources*, 247 Kan. 519, Syl. ¶ 5, 802 P.2d 516 (1990), and that the statutory authority of the Secretary was not unlike that provided to PERB in PEERA. The most obvious difference between *U.S.D. No. 279* and this matter, however, is that the monetary award endorsed by our Supreme Court was to a teachers' association that had itself been the victim of a prohibited practice. Additionally, the language of the PNA differs from that in PEERA, in that the PNA directs the Secretary of Human Resources, in dealing with a prohibited practice complaint, to "either dismiss the complaint or determine that a prohibited practice has been or is being committed, and *shall enter a final order granting or denying in whole or in part the relief sought.*" (Emphasis added.) K.S.A. 72-5430a(b).

Moreover, it is significant to note that the PNA language is identical to the language of K.S.A. 75-4334, *until* it gets to the final action authorized. In the PNA, the Secretary is authorized to grant or deny relief, while in PEERA the PERB is authorized *only to make and file findings.* The *U.S.D. No. 279* decision is based upon the "broad power" granted to the Secretary under K.S.A. 72-5430a to "fashion appropriate relief." 247 Kan. 532. Given that the language in the PEERA version is significantly different, this undermines the value of *U.S.D. No. 279* as justification for PERB's authority to award a make-whole monetary remedy.

Finally, our Supreme Court has also cautioned that there is no indication the legislature intended its actions as to the PNA to have controlling significance with regard to PEERA, or vice versa. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 818, 667 P.2d 306 (1983).

We are not persuaded that similarities between PEERA and PNA or NLRA dictate that PERB should be authorized to award monetary relief under the circumstances of this appeal. Not only do the enactments have critical differences, PERB cites no authority under PEERA that supports monetary damage relief to a public employee who is not a party to the proceedings upon a showing of prohibited practice violations by his or her employer, especially where the relief awarded is intended to make whole the employee for his or her loss of employment.

For all of these reasons, we hold that PERB was not authorized to award monetary damages to Gaskill under these circumstances, thus requiring that we reverse the damage award. Other issues framed by the cross-appeal are rendered moot by this holding.

Reversed and remanded with directions.