(968 P.2d 692)
No. 78,530

KANSAS HUMAN RIGHTS COMMISSION, *Appellee,* v. IRA DALE, *Appellant.*

Opinion filed December 4, 1998.

*Trish Rose,* of Reynolds, Forker, Berkley, Suter & Rose, of Hutchinson, for appellant.

*Judy Fowler,* of Kansas Human Rights Commission, of Wichita, for appellee.

Before MARQUARDT, P.J., LEWIS, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: Ira Dale appeals from a Kansas Human Rights Commission (KHRC) finding, affirmed by the district court, that he discriminated against a rental housing tenant because of her race, which is in violation of the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 *et seq.*

Norma Townsend, a single African-American female, filed a complaint with the KHRC on February 2, 1993, alleging that Dale, a white male, discriminated against her by denying her a particular apartment because of her race. Dale owns numerous apartments which he rents primarily to low income tenants. They are furnished and he pays all of the utilities. He and his wife live in one of the apartment units. Townsend had rented an apartment from Dale on a previous occasion which she had voluntarily vacated and left clean and undamaged. In September 1991, she again leased a one-bedroom apartment from Dale. During the summer of 1992, Townsend's daughter and two grandchildren began staying at her apartment. Dale raised Townsend's rent by $20 per month to cover the increased utilities expense of having additional people in the apartment. Although Dale stated that this was his policy, a white family of four was not charged the additional rent until after Townsend filed her complaint.

Townsend attempted to rent a larger two-bedroom apartment from Dale; however, Dale refused to rent it to her for the following reasons: (1) He was converting the apartment to a one-bedroom, as he had been gradually doing with all his apartments, and her family included too many people for a one-bedroom apartment, (2) she had never asked to rent it as a one-bedroom apartment, (3) he did not allow current tenants to move to different units, and (4) Townsend's grandchildren had caused problems in the complex. Townsend, who had received a workers compensation settlement, claims she offered to prepay rent on both the two-bedroom apartment and the one-bedroom apartment for a period of 6 months. Dale denies that Townsend ever made that offer. Townsend's brother subsequently attempted to rent the two-bedroom apart-

ment for himself, his wife, and his son but was refused. Dale subsequently rented the apartment to a white couple with two children.

A public hearing on Townsend's KHRC complaint was set for August 25 and 26, 1994. On August 23, the KHRC staff attorney contacted the Office of Hearing Examiner by telephone to request cancellation of the hearing, alleging ultimately that it was not necessary because of a proposed settlement agreement. Dale refused to sign the settlement agreement, and on November 9, the KHRC filed a letter requesting that the hearing be rescheduled. Dale objected and filed a motion to dismiss, which the administrative law judge (ALJ) denied.

After an evidentiary hearing, the ALJ found that Dale had illegally discriminated against Townsend and granted Townsend $7,500 in actual damages and assessed a civil penalty of $10,000. The ALJ's order was adopted by the KHRC. Dale's request for reconsideration was denied. The KHRC sought judicial enforcement of the agency action, and Dale petitioned for review. Following a de novo review of the record, the district court adopted the findings of fact and conclusions of law of the ALJ and the KHRC.

The district court's review of a KHRC decision is de novo on the record. The district court reviews the administrative record and has discretion to hear additional evidence. The district court then makes its own findings of fact and conclusions of law but is limited to the issues raised below and in the petition for rehearing. K.S.A. 44-1011; *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 315-16, 674 P.2d 459 (1983) (de novo review of decision by Kansas Commission on Civil Rights [now KHRC]); *Stephens v. Unified School District*, 218 Kan. 220, 228-36, 546 P.2d 197 (1975).

Where the district court has made findings of fact and conclusions of law in a trial de novo from a KHRC proceeding, the function of this court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Beech Aircraft Corp. v Kansas Human Rights Comm'n*, 254 Kan. 270, 275, 864 P.2d 1148 (1993); *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 735-36, 697 P.2d 52 (1985) (*Woods II*). Substantial ev-

idence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998).

Dale first argues the ALJ erred in denying his motion to dismiss the complaint following cancellation of the original public hearing. Kansas Administrative Regulations define when an administrative action should be dismissed. Pursuant to K.A.R. 21-41-8(a), an action should be dismissed when it becomes apparent the KHRC lacks jurisdiction or probable cause. The action *may* be dismissed for administrative convenience at any time prior to the hearing. K.A.R. 21-41-8(b). After service of notice of a hearing, the complainant may discontinue the proceeding only with the consent of the KHRC, K.A.R. 21-41-9.

The KHRC argues persuasively that the ALJ was without legal basis for dismissal of the complaint. Dale makes a policy argument that the administrative proceedings ought to move steadily toward resolution for the same reasons that statutes of limitations exist. He claims he was prejudiced by the delay; however, he offers no indication of prejudice other than counsel's assertion that prejudice "is inherent in the nature of the proceeding." We note that cancellation of the hearing and dismissal would have been fully justified by administrative convenience under K.A.R. 21-41-8(b) if, as the ALJ apparently assumed, the parties had reached a settlement. Because the parties did not settle, the KHRC had no grounds for dismissal of the pending complaint, and Dale did not show prejudice to his case caused by the rescheduling.

Dale next argues the district court erred in adopting the ALJ's finding that Townsend presented a prima facie case of housing discrimination. The Kansas Supreme Court has followed federal housing and employment discrimination law in administrative and civil cases under the KAAD. The proper allocation of burden of proof in a race discrimination case is borrowed from *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). See *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 648 P.2d 234 (1982) (*Woods I*). The burden of proof never shifts, but the burden of going forward with the evidence does. The complainant must first demonstrate a prima facie

case of unlawful discrimination. The burden of production shifts to the respondent to offer nondiscriminatory reasons for the actions, which, taken in the light most favorable to the respondent, would be legitimate. If the respondent does so, the burden of production shifts back to the complainant to prove the reasons were pretextual. The complainant always has the burden of proof by the preponderance of the evidence. *Woods I*, 231 Kan. at 766-68; see *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan. App. 2d 428, Syl. ¶ 4, 796 P.2d 1046, *rev. denied* 246 Kan. 767 (1990).

In order to state a prima facie case of racial discrimination in housing, Townsend was required to show: (1) she is a member of a protected class, (2) she applied for and was qualified to rent the housing at issue, (3) she was denied the opportunity to rent the property, and (4) the subject property remained available or was subsequently rented to a person not a member of the protected class. *Secretary, HUD on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870-71 (11th Cir. 1990).

Dale does not argue that the KHRC did not establish a prima facie case. He refers to the scope of review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, and lists grounds for relief without suggesting which of the eight grounds might apply here. He concludes that his reasons for not renting the two bedroom apartment to Townsend were legitimate. For authority, Dale cites an early federal Fair Housing Act case for the proposition that the complainant must prove that race was a factor in the discrimination in order to prevail in a racial discrimination in housing case. See *Smith v. Sol D. Adler Realty Company*, 436 F.2d 344 (7th Cir. 1971) (remanding with directions to the trial court to order the landlord to tender a lease on a comparable apartment and award up to $1,000, the statutory maximum, to compensate the tenant for mental anguish and violation of her civil rights). The fact pattern in the Smith case is almost identical to the instant case. Rather than lending support to Dale's position, it supports the decisions below.

The KHRC established that (1) Townsend, an African-American, is a member of a protected class, (2) she sought to rent and

was qualified to rent the two bedroom apartment, (3) she was denied rental of the apartment, and (4) the apartment was subsequently rented to a white family of four. The prima facie case is essentially undisputed except for the element of qualification. Dale appears to argue Townsend was not qualified because he did not allow tenants to move from one of his apartments to another and because of problems with supervision of the grandson. There was evidence that Dale had allowed another tenant to move his father into his current apartment and rent another unit for himself, which was precisely Townsend's proposal. Dale had not complained of problems with the grandson prior to refusing to rent the two bedroom apartment to Townsend. There was sufficient competent evidence to conclude that the KHRC had proved a prima facie case of racial discrimination in housing.

Dale's next argument is that the district court erred in adopting the ALJ's finding that he failed to articulate a legitimate, nondiscriminatory reason for his actions. In support thereof, Dale points to inconsistencies in Townsend's testimony. The ALJ found that of all the reasons Dale offered for not renting the two bedroom apartment to Townsend, the problems with the grandson, taken in the light most favorable to Dale, would be a legitimate nondiscriminatory reason. However, the ALJ found that Dale's reasons were pretextual. Because the district court's findings are supported by sufficient competent evidence, they will not be disturbed on appeal.

Dale next contends, for the first time, that K.S.A. 44-1019(i), the provision authorizing the KHRC to award damages for pain, suffering, and humiliation, is an unconstitutional denial of due process. He argues that an award for emotional damages in the absence of physical injury is in essence punitive and that he should be entitled to trial by a jury. Dale's only support for this argument, *Woods I*, 231 Kan. at 776, has been legislatively overruled. See L. 1984, ch. 186, § 2, now K.S.A. 44-1019(i). While the constitutionality of a statute may be raised for the first time on appeal, if the issue is not adequately briefed to challenge the presumption of constitutionality, it is deemed abandoned. *McKissick v. Frye*, 255

Kan. 566, 578, 876 P.2d 1371 (1994). We deem Dale's constitutionality issue to be abandoned.

Finally, Dale contends the evidence was insufficient to support the civil penalty. The 1992 amendment to K.S.A. 44-1019 removed the $2,000 cap on damages and provided that the ALJ *may* impose an additional civil penalty, not to exceed $10,000 for a first violation, "to vindicate the public interest." L. 1992, ch. 142, § 3. The amendment was effective July 1, 1992, prior to the events at issue in this case. The ALJ found Dale's violation to be egregious because it was knowing and intentional. The maximum penalty for a first offense was then imposed because Dale did not present evidence of his financial circumstances.

The Kansas statute providing for civil damages for discrimination in housing parallels the federal provision, 42 U.S.C. § 3612(g)(3) (1994), within the Fair Housing Act. The Tenth Circuit Court of Appeals reduced the civil damage award from $10,000 to $500 in a case where the owner of an "adults only" mobile home park silently changed his policy when informed of its illegality. *Morgan v. Secretary of Housing and Urban Dev.*, 985 F.2d 1451 (10th Cir. 1993). The ALJ considered the action egregious because the owner agreed to withdraw the policy in response to a complaint but did not publicize the change, thus perpetuating the other residents' belief that they could not sell their homes to families with children. 985 F.2d at 1460. The appellate court held that the ALJ abused his discretion because most of the factors he relied upon were not supported by substantial evidence. 985 F.2d at 1461.

Here, the evidence established that Dale had rented to Townsend on prior occasions, and, in fact, she was a current tenant at the time of the complaint. Although the ALJ found that discrimination occurred sufficient to support the damage award and to support an order to cease the discriminatory conduct, there is no substantial evidence to support the finding that Dale's conduct required the imposition of a civil penalty "to vindicate the public interest." See K.S.A. 44-1019(i). Accordingly, we hold it was an abuse of discretion to impose the $10,000 civil penalty.

Affirmed as to the finding of discrimination and the award of actual damages, but reversed as to the imposition of a civil penalty.