228 P.3d 403 (2010)
FORT HAYS STATE UNIVERSITY, Appellant/Cross-appellee,
v.
FORT HAYS STATE UNIVERSITY CHAPTER, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, Appellee/Cross-appellant, and
The Kansas Public Employee Relations Board, Appellee/Cross-appellee.
Fort Hays State University Chapter, American Association of University Professors, Plaintiff,
v.
Fort Hays State University and The Kansas Public Employee Relations Board, Defendants.
No. 99,021.
Supreme Court of Kansas.
April 22, 2010.
*405 Todd D. Powell, general counsel, of Fort Hays State University, argued the cause, and Wm. Scott Hesse, assistant attorney general, was with him on the briefs for appellant/cross-appellee.
Lawrence G. Rebman, of Rebman & Associates, LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee/cross-appellant Fort Hays State University Chapter, the American Association of University Professors.
Darren E. Root, staff attorney, of Kansas Department of Labor, argued the cause, and A.J. Kotich, general counsel, was with him on the briefs for appellee/cross-appellee Kansas Public Employees Relations Board.
Mark A. Kistler and Steve A.J. Bukaty, of Steve A.J. Bukaty, Chartered, of Overland Park, were on the brief for amicus curiae Kansas State Lodge of the Fraternal Order of Police.
The opinion of the court was delivered by BILES, J.:
By appeal and cross-appeal, all parties challenge rulings concerning a money damages award ordered by the Public Employee Relations Board (PERB or the Board) to accompany findings that Fort Hays State University (FHSU) engaged in prohibited labor practices under the Public Employer-Employee Relations Act (PEERA), K.S.A. 75-4321 et seq. The university challenges the agency's statutory authority to impose money damages. All parties agree PERB has no express authority in this regard.
Therefore, the threshold question is whether K.S.A. 75-4323(e)(3) implicitly grants PERB authority to order money damages as a consequence for prohibited practice violations. This is an issue of first impression for this court. We hold the statute does not allow PERB to assess money damages for these infractions. This holding renders all other issues moot. We explain our reasoning below.

*406 FACTUAL AND LEGAL BACKGROUND
The university hired Frank Gaskill as an associate professor for the 2000-2001 academic year. Gaskill was initially hired on the tenure track, and his employment agreement granted 4 years of credit toward tenure. At the time he was hired, the Fort Hays State University Chapter of the American Association of University Professors (AAUP) was the certified representative for FHSU professors. This certification imposed certain duties upon FHSU in its labor practices and gave AAUP certain rights as the bargaining representative under PEERA. See K.S.A. 75-4327(b).
On May 2, 2001, FHSU notified Gaskill it was not extending an employment offer for the 2001-2002 academic year. At the time Gaskill was terminated, FHSU and AAUP had not entered into a "memorandum of agreement" regarding the conditions of employment, grievance procedures, or provisions for the impartial arbitration of disputes as authorized under PEERA. See K.S.A. 75-4327(b); K.S.A. 75-4330. The parties appear to agree the faculty handbook existing prior to AAUP's certification provided the grievance process for Gaskill to object to his termination. It is unclear whether the parties agree certain handbook provisions were overridden by PEERA, but that is certainly PERB's finding in this case. That finding is not presented as an issue here.
The prohibited practices relevant to this appeal occurred during Gaskill's attempts to grieve the termination decision. Much of the conflict between the parties involved provisions in the handbook and the university's efforts restricting or ignoring AAUP's efforts on Gaskill's behalf. Eventually, AAUP filed a prohibited practices complaint with PERB alleging the university failed to respect AAUP's representational status as required by law. AAUP claimed the university violated PEERA by: (1) failing and refusing to allow AAUP to represent Gaskill during the grievance process; (2) failing to provide information required for AAUP to represent Gaskill; and (3) unilaterally changing the terms and conditions of employment without first bargaining in good faith with AAUP.
Gaskill was not a party to the AAUP's administrative action. But approximately 6 months after the agency proceedings commenced, Gaskill initiated his own civil lawsuit against the university in Ellis County District Court alleging breach of his employment agreement. The district court dismissed the lawsuit because it was brought as a civil action under chapter 60. The district court ruled Gaskill's exclusive remedy was under the Kansas Judicial Review Act (KJRA). See K.S.A. 2009 Supp. 77-601 et seq. It also determined Gaskill had not exhausted his administrative remedies with the university as the KJRA required. The Court of Appeals affirmed. Gaskill v. Ft. Hays State Univ., 31 Kan.App.2d 544, 546, 70 P.3d 693 (2003) (KJRA is "the exclusive remedy for professors claiming either wrongful termination or breach of contract against the state educational institutions listed in K.S.A. 76-711[a].").
After the Court of Appeals affirmed dismissal of Gaskill's contract claim, the presiding officer designated by PERB to hear AAUP's administrative action issued an initial order. The presiding officer recognized a certified employee organization, such as AAUP, had the right to represent employees in grievance proceedings under K.S.A. 75-4328. The presiding officer found FHSU's refusal to allow AAUP to actively represent Gaskill during an informal grievance process violated K.S.A. 75-4333(b)(6) (denial of employee organization's rights accompanying certification). The presiding officer further found the university refused or failed to provide adequate, timely notice of the scheduled grievance proceedings to AAUP, which constituted another K.S.A. 75-4333(b)(6) violation.
The presiding officer additionally held Gaskill was entitled to a formal hearing under the employee handbook, so FHSU's failure to begin those formal proceedings after they were requested amounted to a unilateral change to Gaskill's conditions of employment without meeting and conferring first with AAUP. This action was deemed to be a prohibited practice under K.S.A. 75-4333(b)(5) (refusal to meet and confer in good faith with representatives).
*407 Finally, the presiding officer concluded that any prohibited practices found against a public employer under K.S.A. 75-4333(b)(2)-(8) necessarily amounted to another prohibited practice under K.S.A. 75-4333(b)(1) (interfere, restrain, or coerce public employees in the exercise of rights granted in K.S.A. 75-4324). Each violation was found to be willful and harmful to AAUP.
The presiding officer then entered various remedial orders against FHSU: (1) cease and desist from the prohibited practices; (2) post a notice advising employees FHSU will recognize AAUP's right to represent bargaining unit members; (3) post a notice advising all employees FHSU will not interfere with, restrain, or coerce employee rights under PEERA; and (4) post a notice advising employees the university will not unilaterally change terms and conditions of employment applicable to unit members without first meeting and conferring in good faith over those conditions. These four remedial orders, and the findings supporting them, were not appealed and are not before us.
The fifth remedy focuses our attention for this appeal. The presiding officer awarded $142,013.62 in money damages to Gaskill, even though Gaskill was not a party to the administrative action. This award was characterized as a "make-whole remedy," which is a term not previously found in our case law or PEERA, but seems to connote returning Gaskill to the status quo existing prior to the prohibited practices violations. See Oxford Dictionary of Modern Legal Usage 543 (2d ed. 1995).
The following claimed damages comprised the award: (1) $10,147 in decreased salary for academic year 2001-2002the difference between what Gaskill would have received at FHSU and his subsequent salary at another school; (2) $3,620.62 in moving expenses; (3) $6,194 in job search expenses; (4) $1,480 for lost retirement contributions for academic year 2001-2002; (5) $112,000 for lost income for academic years 2002 through 2004 after Gaskill lost his subsequent job due to a force reduction; and (6) $8,568 for lost retirement contributions for academic years 2002-2004.
During the administrative action, the parties disputed whether PERB had the authority to impose a monetary remedy. The presiding officer found PERB could make such an award based upon K.S.A. 75-4323(e)(3), which provides the Board may "[m]ake, amend and rescind such rules and regulations, and exercise such other powers, as appropriate to effectuate the purposes and provisions of this act." (Emphasis added.)
In making the award, the presiding officer noted the absence of any Kansas case law that "squarely answered the question" whether PERB had authority to order a monetary remedy. But the presiding officer found secondary support for this power because the Board had previously ordered monetary awards without appellate challenge and because this court approved the use of a monetary remedy in a prohibited practices case involving a teachers' union and a unified school district under a different set of statutes, the Professional Negotiations Act (PNA), K.S.A. 72-5413 et seq. See U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources, 247 Kan. 519, 802 P.2d 516 (1990). The presiding officer believed PEERA's provisions were sufficiently similar to the PNA to support the money damages award against the university.
FHSU sought further administrative review from PERB regarding the presiding officer's initial order, citing numerous errors, including that Gaskill's wrongful termination claims were previously litigated in the failed breach-of-contract case, and asserting PERB lacked statutory authority to order a monetary remedy. The university did not challenge the cease and desist order or the requirement that it post the specified notices.
PERB affirmed the presiding officer's determination that FHSU willfully committed prohibited practices, and it affirmed the presiding officer's analysis that PEERA authorizes the Board to award money damages. But PERB decided it would not grant Gaskill money damages. Although the Board's order is not clear, PERB appears to have decided the award was improper because Gaskill was not a party to the administrative proceedings and his breach-of-contract lawsuit was not before it.
*408 As to the statutory interpretation question in this appeal, PERB held it possessed authority to grant monetary damages to an aggrieved party under K.S.A. 75-4323(e)(3) the provision authorizing the exercise of other powers as appropriate to effectuate PEERA's purposes and provisions. The Board adopted the presiding officer's rationale for this legal authority and as additional support cited N.L.R.B. v. General Drivers, Chauffeurs & Helpers, Etc., 264 F.2d 21, 23 (10th Cir.1959), a decision interpreting the National Labor Relations Act as finding the primary responsibility for formulating remedies rests with the National Labor Relations Board.
AAUP appealed to the Shawnee County District Court under the KJRA, arguing PERB erred by dissolving the monetary award to Gaskill. AAUP contended the Board failed to provide specific explanations for its departure from the presiding officer's initial order. FHSU did not seek judicial review from PERB's action, presumably because the Board denied monetary relief to Gaskill.
The district court reversed PERB's conclusion that monetary damages were improper. First, the district court held there was insufficient explanation to justify the Board's reversal of the presiding officer's initial order, making PERB's decision arbitrary and capricious. See K.S.A. 2009 Supp. 77-621(c)(8). Second, it held PERB incorrectly decided issue preclusion barred Gaskill's breach-of-contract claim from being considered in the administrative proceedings. This second explanation seems to be based on the district court's conclusion that Gaskill's contract action was identical to the prohibited practices claim. It stated: "If the [Ellis County District Court] did not have jurisdiction to hear Gaskill's breach of contract case, the issue is now properly before this Court pursuant to the KJRA within the appeal by the AAUP, including the appropriateness of the remedy for the violations by FHSU." Because of subsequent proceedings, the district court's findings as to this point are not before us.
On remand, PERB interpreted the district court's decision as affirming its statutory authority to award monetary damages. It then set out to define the scope of its authority by finding its power was broad, but not limitless. It held PERB was restricted by the standard of review requiring its decisions to be supported by substantial competent evidence and by PEERA's statutory purposes, which the Board defined as remedial. For example, PERB concluded it did not have the ability to award punitive damages or anything resembling a "windfall," although that term was not defined. The Board stated it could only remedy the prohibited practices it found in the evidence.
But, underscoring the expansive view PERB took of its statutory authority, it stated: "The standards by which PERB's discretion [to fashion remedies] is evaluated is whether a reasonable person would agree with PERB under the circumstances and in light of the evidence before it." No legal authority was cited for this far-reaching proposition.
Returning to the specific issue, PERB reaffirmed its conclusion that FHSU committed a prohibited practice and that Gaskill suffered damages as a result. PERB then examined the evidentiary record to determine whether there was support for the presiding officer's $142,013.62 damages award. The Board emphasized it was not required to accept Gaskill's testimony about his financial losses without corroborating evidence. PERB then reduced Gaskill's award to $12,772.80, finding sufficient evidence only to justify $10,147 in lost wages and $2,625.80 in moving expenses. It held there was inadequate documentation to give job search expenses or lost retirement contributions. It also held the lost wages for the 2002-2003 and 2003-2004 school years were too speculative and remote. But implicit within these determinations was PERB's belief that it had the authority to award such monetary damages had the evidence supported it.
Both FHSU and AAUP returned to the district court to pursue new petitions for review to challenge PERB's revised final order. Their claims were consolidated. FHSU continued to argue PERB had no authority to award monetary damages and, in particular, lacked the ability to grant such damages to a nonparty. AAUP contended *409 the evidence did not support PERB's drastic reduction to the presiding officer's damages award.
In rendering the decision now subject to this appeal, the district court noted there was no case law defining available remedies under PEERA, but it agreed with the Board that this court's U.S.D. No. 279 decision involving the PNA was analogous. The district court reasoned the PNA and PEERA had similar purposes and believed the U.S.D. No. 279 rationale would apply to PERB determinations.
The district court also relied on the U.S.D. No. 279 opinion to hold PERB could award damages to Gaskill because he was a unit member represented by AAUP, even though he was not a party to the administrative proceedings. The district court found Gaskill's failed district court contract claim had nothing to do with the prohibited practices proceedings before PERB. Finally, the district court resolved AAUP's challenge against the reduction in the damages award with a thorough analysis of PERB's decision. It affirmed the $12,772.80 award to Gaskill and the Board's deductions from the presiding officer's initial order.
With both sides now unhappy with the district court's outcome, FHSU and AAUP sought review from the Court of Appeals. PERB did not appeal but filed briefs in response to the issues raised by FHSU and AAUP. Deciding in the university's favor, the Court of Appeals defined the issue before it as
"whether PERB may properly award monetary damages to a nonparty for breach of an employment contract or wrongful termination in order to remedy a prohibited practice under PEERA, where the nonparty's private cause of action seeking such damages has previously been dismissed for failure to exhaust administrative remedies in the exclusive forum for same." Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs., 40 Kan.App.2d 714, 724-25, 195 P.3d 259 (2008) (Ft. Hays).
The Court of Appeals' emphasis was placed on the fact that Gaskillthe award recipientwas not a named party to the PEERA proceedings and that the damages were essentially those Gaskill would have received had he properly filed a wrongful termination or breach-of-contract action against the university. See 40 Kan.App.2d at 725, 195 P.3d 259.
In reaching its decision, the Court of Appeals explained money damages were improper because: (1) The award punished prohibited practices by awarding the employee breach-of-contract damages, exceeding PEERA's statutory purposes; (2) PERB lacked jurisdiction over controversies where the grievance actually arises from a breach of contract or wrongful termination claim, not a prohibited practice; (3) the damages award measured by wrongful termination was too invasive in the employer-employee relationship to be considered a minimal intervention under K.S.A. 75-4323(f); (4) allowing wrongful termination or breach-of-contract damages awards in prohibited practices claims contradicted the KJRA's clear mandate that it provides the exclusive remedy for those violations; and (5) the damages awarded were not causally related to the prohibited practices violations because there was no evidence establishing Gaskill would have continued his employment with FHSU, even if AAUP's representational status had been honored. 40 Kan.App.2d at 728-29, 195 P.3d 259.
But it is the final reason given by the Court of Appeals to uphold the university's challenge that has larger implications and greater urgency for PERB. The panel found the Board lacks authority to order any substantive relief in a prohibited practices case. Specifically, the Court of Appeals held PERB's enabling statutes limited it to making findings and filing them in prohibited practices proceedings. 40 Kan.App.2d at 728, 195 P.3d 259. The panel reasoned K.S.A. 75-4334(b), which addresses prohibited practices complaints, only states that "the board shall make findings as authorized by this act and shall file them in the proceedings" and does not reference imposing remedies. Therefore, the panel determined the more specific statutory provision controlled over the general language to effectuate PEERA's purposes and provisions. 40 Kan. App.2d at 728-29, 195 P.3d 259. As noted by *410 the amicus curiae Kansas State Lodge of the Fraternal Order of Police (FOP), the Court of Appeals' interpretation effectively eviscerates PERB's ability to act on its findings.
Both AAUP and PERB filed petitions for review with this court challenging the Court of Appeals' determinations. We granted those petitions. Jurisdiction is proper under K.S.A. 20-3018(b) (review of Court of Appeals' decision).

ANALYSIS
Kansas administrative agencies have no common-law powers. Any authority claimed by an agency or board must be conferred in the authorizing statutes either expressly or by clear implication from the express powers granted. See Pork Motel, Corp. v. Kansas Dept. of Health & Environment, 234 Kan. 374, 378, 673 P.2d 1126 (1983).
PERB and AAUP both argue PEERA grants the Board the power to impose monetary remedies in conjunction with finding prohibited practice violations. But they concede PEERA does not expressly authorize such awards. Therefore, if PERB is to have such power, it must arise by clear implication from PERB's general statutory charge "to effectuate the purposes and provisions of [PEERA]," as provided in K.S.A. 75-4323(e)(3).
Both PERB and AAUP contend PERB's quasi-judicial functions in prohibited practices complaints necessitate having the power to implement PEERA's purposes and provisions. They make three arguments: (1) PEERA's provisions necessarily require sweeping remedial power; (2) the pre-1986 version of PEERA contained a broad grant of authority that should be read into the statute today; and (3) the implied power to award monetary damages can be derived from provisions in other labor laws.

Standard of Review
Judicial review of PERB actions is governed by the KJRA under K.S.A. 75-4334(c). The KJRA articulates eight circumstances in which a court may grant relief. K.S.A. 2009 Supp. 77-621(c). The provisions most applicable to the threshold issue on appeal are K.S.A. 2009 Supp. 77-621(c)(2) ("the agency has acted beyond the jurisdiction conferred by any provision of law") and K.S.A. 2009 Supp. 77-621(c)(4) ("the agency has erroneously interpreted or applied the law"). This court exercises the same statutorily limited judicial review of an agency's or board's action as the district court does, i.e., this court examines the appeal as if it were made directly to the appellate court. See Jones v. Kansas State University, 279 Kan. 128, 139, 106 P.3d 10 (2005).
As noted above, the determinative issue is whether PEERA implicitly empowers PERB to award monetary damages for prohibited practice violations. This is a matter of statutory interpretation, which is subject to unlimited review by an appellate court. Moser v. Kansas Dept. of Revenue, 289 Kan. 513, 516, 213 P.3d 1061 (2009).
PERB contends its interpretation of PEERA is entitled to a great deal of judicial deference and its view should be upheld if it is supported by a rational basis. The Board refers us to City of Wichita v. Public Employee Relations Bd., 259 Kan. 628, 631, 913 P.2d 137 (1996), to support this proposition. Indeed, PERB prefaced its final order in these administrative proceedings on the premise that its exercise of power in any given case is limited only by the broad concepts of reasonableness, arbitrariness, and abuse of discretion.
But PERB's argument ignores this court's more recent decisions holding an agency's or board's statutory interpretation is not afforded any significant deference on judicial review. See In re Tax Appeal of Lemons, 289 Kan. 761, 762, 217 P.3d 41 (2009) ("No significant deference is due to an agency's interpretation or construction of a statute."); Higgins v. Abilene Machine, Inc., 288 Kan. 359, 361, 204 P.3d 1156 (2009) ("No significant deference is due [an administrative law judge's] or the [Workers Compensation] Board's interpretation or construction of a statute."). Even the City of Wichita decision relied upon by PERB noted courts are free to substitute their judgment for that of the administrative agency when reviewing a question of law. City of Wichita, 259 Kan. *411 at 631, 913 P.2d 137. In this matter, an appellate court exercises unlimited review on the determinative question of statutory interpretation without deference to PERB's view as to its own authority.
It is necessary next to review PEERA's statutory framework, purposes, and provisions before addressing the parties' arguments.

PEERA Provisions
PEERA is a labor law covering "all persons employed by the State of Kansas and its agencies, except supervisory employees, professional employees of school districts, elected and management officials, and confidential employees." Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA, 233 Kan. 801, 803, 667 P.2d 306 (1983). The principal right created by PEERA is for public employees to form, join, or participate in an employee organization designed to meet and confer with public employers regarding grievances and conditions of employmentif they so choose. K.S.A. 75-4324.
To make this right meaningful, PEERA mandates public employers recognize the employee organization's right to represent its members regarding specific issues and imposes a duty on public employers to meet and confer in good faith with the employee organization. K.S.A. 75-4327(a)-(b). Because parties are required to bargain in good faith, this court has described PEERA as a hybrid of two traditional labor law models, commonly called "meet and confer" and "collective bargaining" acts. 233 Kan. at 804-05, 667 P.2d 306.
PEERA's stated purposes are to encourage public agencies, employees, and their representatives to enter into discussions with the "affirmative willingness to resolve grievances and disputes related to conditions of employment" and to improve employer-employee relations by recognizing the public employee's right to join, or refrain from joining, organizations of their choice. K.S.A. 75-4321(b).
This court has described PEERA in the following manner:
"[PEERA is] administered by the five-member Public Employee Relations Board which is empowered to make rules and regulations, establish procedures for the prevention of improper public employer and employee practices, hold hearings and enforce the attendance of witnesses and the production of documents, conduct employee elections, and determine recognized employee organizations and hear and determine controversies concerning prohibited practices." Kansas Bd. of Regents, 233 Kan. at 803-04, 667 P.2d 306.
PERB's duties are scattered throughout PEERA, but K.S.A. 75-4323 confers the following general powers: (1) establish procedures preventing improper labor practices; (2) hold hearings and make inquires necessary to carry out PERB's functions and powers; (3) amend and rescind rules and regulations; and (4) "exercise such other powers, as appropriate to effectuate the purposes and provisions of the act." K.S.A. 75-4323(e)(3). In the context of political subdivisions, such as counties and municipalities, PEERA admonishes PERB to intervene in public employer-public employee relations "to the minimum extent possible to secure the [purposes] expressed in K.S.A. 75-4321." K.S.A. 75-4323(f).
This appeal targets PERB's role in hearing and determining prohibited practices claims. K.S.A. 75-4333 enumerates prohibited labor practices for public employers, public employees, and labor organizations. PERB's role in these proceedings is described in K.S.A. 75-4334:
"(a) Any controversy concerning prohibited practices may be submitted to the board. . . . Hearings on prohibited practices shall be conducted in accordance with the provisions of the Kansas administrative procedure act. If the board determines an emergency exists, the board may use emergency adjudicative proceedings as provided in K.S.A. 77-536 and amendments thereto. A strike or lockout shall be construed to be an emergency. The board may use its rulemaking power, as provided in K.S.A. 75-4323 and amendments thereto, to make any other procedural *412 rules it deems necessary to carry on this function.
"(b) The board shall either dismiss the complaint or determine that a prohibited practice has been or is being committed. If the board finds that the party accused has committed or is committing a prohibited practice, the board shall make findings as authorized by this act and shall file them in the proceedings.

"(c) Any action of the board pursuant to subsection (b) is subject to review and enforcement in accordance with the act for judicial review and civil enforcement of agency actions." (Emphasis added.)
The above framework confirms PEERA does not explicitly authorize PERB to award any monetary remedies as a consequence for prohibited practices violations. The parties concede this in their arguments.
But PERB and AAUP maintain this authority is implied by the right to exercise the powers necessary to effectuate PEERA's purposes, as provided in K.S.A. 75-4323(e)(3). We consider this next by discussing the parties' contentions regarding the following arguments: (1) PEERA's provisions necessarily require broad remedial power, including allowing PERB to impose money damages; (2) the pre-1986 version of PEERA granted this authority; and (3) other labor laws should persuade us the implicit power exists within PEERA.

Power arising by clear implication from PEERA
Both PERB and AAUP argue the Board has the power to award money damages under K.S.A. 75-4323(e)(3) through its general authority to effectuate PEERA's purposes and provisions. They also cite PERB's quasi-judicial role in prohibited practice claims and the authority given other state and federal labor-related agencies to review prohibited labor practices.
But in the absence of express statutory language, the essence of their claim is that it is illogical for PERB to have the duty to determine whether a prohibited practice occurred, without the additional power to impose money damages when the Board deems such an award appropriate to remedy the resulting consequences. And while this may be a valid public policy concern, such considerations in the area of statutory provisions are for the legislature to resolve rather than this court. State v. Prine, 287 Kan. 713, 737, 200 P.3d 1 (2009) ("Of course, the legislature, rather than this court, is the body charged with study, consideration, and adoption of any statutory change that might make [the statute] more workable."); see also Landmark Nat'l Bank v. Kesler, 289 Kan. 528, 544, 216 P.3d 158 (2009) ("It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy."); Higgins, 288 Kan. at 364, 204 P.3d 1156 ("[W]e are not free to act on emotion or even our view of wise public policy. We leave the guidance of public policy through statutes to the legislature.").
If we are to agree PERB may impose money damages, we must find that power clearly arises from the Board's express statutory framework and not because we simply believe the authority should be there. Looking first at the statutory provisions, PEERA's express purposes weigh against finding the legislature conferred upon PERB a power to order a party to pay money damages. PEERA specifies two distinct purposes for the Board: (1) to encourage public employers, employees, and their representatives to discuss grievances and disputes; and (2) improve the public employer-employee relationship by recognizing the employee's right to organize. K.S.A. 75-4321(b). It is difficult to conclude the power to award money damages clearly arises to effectuate these enumerated purposes.
For example, the cease and desist order, which admittedly is not in dispute here because the university did not pursue a challenge to it, arguably does a better job of preventing future prohibited practices by encouraging discussion and improving employer-employee relationships than does a monetary award to a single employee. The notices that are part of that order further PEERA's stated purposes by educating the university's public employees about their rights and acknowledging FHSU's duty to recognize them, which is the essence of encouraging *413 discussion and improving employer-employee relationships. See State Dept. of Administration v. Public Employees Relations Bd., 257 Kan. 275, 293, 894 P.2d 777 (1995) (PERB did not exceed its statutory jurisdiction by fashioning a remedy that included cease and desist orders.).
In addition, the cease and desist order is more consistent with the actual prohibited practices found in this case and the facts supporting those findings. Recall PERB found FHSU violated K.S.A. 75-4333(b)(5) (refusal to meet and confer in good faith with representatives of recognized employee organizations) and K.S.A. 75-4333(b)(6) (denying the representative's rights accompanying certification or formal recognition). The underlying facts supporting those findings were misconduct directed at AAUP, the certified organizational representative, not Gaskill. The third prohibited practices violation was found under K.S.A. 75-4333(b)(1) (interfere, restrain, or coerce public employees in the exercise of organizational rights). But this violation was premised solely on the facts supporting the subsections (5) and (6) infractions, which were found to be directed at AAUP's representational status. Accordingly, each violation directly concerns AAUP, so the attendant remedy must relate directly to the statutory rights that were denied the representative organization, not the employee.
AAUP, of course, argues the monetary award benefits the entire bargaining unit, but it is difficult to discern how. The award to Gaskill is significantly less direct than the cease and desist order, especially when the prohibited practices at issue here concern only AAUP's representational status in a grievance process, as opposed to specific retaliation that might occur in another case against a single employee for union-related activities. See K.S.A. 75-4333(b)(4) (discharge or discrimination against an employee for filing grievances under PEERA, participating in proceedings provided by PEERA, or forming, joining or choosing to be represented by an employee organization). Any connection between the monetary damages ordered in this case and PERB's statutory purposes to encourage discussion of grievances and improving relationships is tenuous at best.
Viewed another way, the most obvious interpretation to give PERB's action and AAUP's argument is that the monetary remedy will coerce the university's future compliance with PEERA to avoid paying large monetary awards. PERB concedes as much when it wrote in its petition for review: "Without PERB having authority to redress harm that a prohibited practice cause[s,] leaves the grievantpublic employer or employee organizationwithout an effective avenue to punish and discourage prohibited practices." (Emphasis added.)
But this taints the monetary remedy as a punitive action designed to foster employer apprehension in future labor dealings. We cannot reconcile this view with the statutory scheme set out in PEERA, especially when PERB concedes it is without authority to punish wrongdoers and that PEERA does not create a private right of action for individuals. It is also contrary to this court's holding that the KJRA is the exclusive remedy for university professors to pursue breach-of-contract claims. See Schall v. Wichita State University, 269 Kan. 456, 482-83, 7 P.3d 1144 (2000).
Seen for what it truly is, the monetary award to Gaskill is obviously less directed toward PEERA's legislatively stated purposes and provisions than the cease and desist order, which can be enforced in district court if it is violated. K.S.A. 75-4334(c) ("Any action of the board pursuant to subsection (b) [regarding a prohibited practice finding] is subject to review and enforcement in accordance with the [KJRA]." [Emphasis added.]). We agree with the Court of Appeals when it addressed AAUP's argument, by stating:
"The utter disconnect between the prohibited practice violation and the damage award to Gaskill is demonstrated by AAUP's brief on appeal that suggests the violation `caused damage to all members of the bargaining unit.' While this may be true, we fail to appreciate why such widespread damage should be measured and awarded to Gaskill as if he would have prevailed in his breach of contract action. *414 In fact, even if AAUP had been allowed to represent Gaskill and if there had been a proper meet and confer proceeding, this certainly would not have established that Gaskill was entitled to monetary damages based upon his loss of employment at FHSU. The award of monetary damages under these circumstances demonstrates that PERB acted in a manner beyond its statutory authority." Ft. Hays, 40 Kan. App.2d at 729-30, 195 P.3d 259.
As a final point, statutory construction rules hold that specific statutes control over general ones. See In re K.M.H., 285 Kan. 53, 82, 169 P.3d 1025 (2007), cert. denied ___ U.S. ___, 129 S.Ct. 36, 172 L.Ed.2d 239 (2008). The argument could be made that PERB's authority under K.S.A. 75-4334(b) to make findings and file them in prohibited practice proceedings comes from a more specific statute, which controls over the general power in K.S.A. 75-4323(e)(3) to effectuate PEERA's purposes. With this construction, the general power would not apply in prohibited practices proceedings.
The Court of Appeals appears to have taken this stricter view when it held PERB's powers are limited to making findings and filing them in the proceedings. Ft. Hays, 40 Kan.App.2d at 728, 195 P.3d 259. But taken to its logical end, this statutory interpretation renders PERB powerless to enter nonmonetary remedies, such as cease and desist orders, which this court has accepted in the past. See State Dept. of Administration, 257 Kan. at 293, 894 P.2d 777.
It is unnecessary to further explore the merits to this argument in this appeal because there are other grounds for determining the monetary award was improper. It is sufficient to note there is support for the more restrictive approach to PERB's remedial powers taken by the Court of Appeals. In the case before us, we find this more restrictive perspective to PEERA's language at the least compels against our finding implicit authority for PERB to impose monetary damages, which is on the far end of the state agency-power continuum. See Ft. Hays, 40 Kan.App.2d at 729, 195 P.3d 259 ("[T]he award of monetary damages measured by wrongful termination of an employment contract is arguably the ultimate intervention in employee-employer relations.").
For these reasons, we find no support within PEERA's statutory framework to hold PERB has the power to impose monetary damages for a prohibited practices violation. We consider next whether provisions in the original version of PEERA, which were changed in 1986, alter this view.

PEERA's pre-1986 version
PERB and AAUP next argue this court should rely upon an older version of PEERA, which included an arguably broader remedy provision, to determine the power to make monetary awards implicitly exists today. This argument lacks merit under our statutory construction rules.
By way of background, K.S.A. 75-4334(b) (Weeks 1977) initially contained a sentence stating: "Any person aggrieved by a final order of [PERB] granting or denying in whole or in part the relief sought may obtain a review of such order in the district court." (Emphasis added.) L. 1971, ch. 264, sec. 14. In 1986, the law was changed to delete this provision and add language authorizing agency action reviews under the KJRA. L. 1986, ch. 318, sec. 139; see K.S.A. 75-4334(b),(c). The initial language is significant, PERB and AAUP argue, because this court held similar language within the Professional Negotiations Act gave the Secretary of Human Resources authority to impose a monetary remedy. U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources, 247 Kan. 519, 532, 802 P.2d 516 (1990).
AAUP and FOP argue the legislature accidentally removed the broader remedy language. They say the legislature merely intended to insert the statutory process for judicial review of agency decisions into PEERA. The amendment was made during a broad overhaul of the KJRA. See L. 1986, ch. 318, secs. 1-9, 139. But this argument is based on a heading used in the minutes of a committee report, not from any meaningful legislative history regarding this statutory section. See Minutes, Sen. Judiciary Comm., February 21, 1986. We find no support within *415 the legislative history either to support or refute this contention.
Further, there is no way to overcome the fact the legislature deleted this provision, even if the deletion was a mistake. When the legislature amends a statute, this court must presume it intended to change the law from how it existed because we assume the legislature does not enact useless or meaningless legislation. State v. McElroy, 281 Kan. 256, 263, 130 P.3d 100 (2006). This court may correct clerical errors or inadvertent errors in terminology if the intent of the legislature is plain and unmistakable. But appellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of the language used, regardless of the legislature's intention. Only the legislature may remedy these types of error. Kenyon v. Kansas Power & Light Co., 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (citing Russell v. Cogswell, 151 Kan. 793, 795, 101 P.2d 361 [1940]).
Under the only reasonable reading of K.S.A. 75-4334 and the 1986 amendments, the legislature deleted the language stating: "Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the district court." This cannot be characterized as a clerical error. If the legislature did not intend to delete this provision, the legislature alone must remedy the mistake. As such, the legislature's decision to delete this wording weighs against finding PERB has remedial powers to award money damages for prohibited practices violations.

Implied authority from other labor laws
AAUP and PERB next argue the statutory authority granted in the Kansas PNA, the federal National Labor Relations Act (NLRA), and the case law interpreting these acts, which allow some monetary awards, are persuasive authority that PERB implicitly has this power too. The argument appears to be that these state and federal acts demonstrate a general labor law principle that a board reviewing prohibited practices complaints should be able to remedy the consequences from such violations.
Taking the federal law first, the NLRA, 29 U.S.C. §§ 151-69 (2006), contains a provision explicitly granting the National Labor Relations Board (NLRB) authority to remedy prohibited practices violations. The NLRB is instructed that if it finds a prohibited practice:
"[T]he Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him." (Emphasis added.) 29 U.S.C. § 160(c) (2006).
Clearly, the NLRA remedy provision is distinguishable from PEERA because it expressly authorizes the NLRB to order remedies, including back pay. Furthermore, this court has declined to apply NLRA decisions in at least one PEERA case because of the distinctions arising between private employment, covered by the NLRA, and public employment under PEERA. See City of Wichita v. Public Employee Relations Bd., 259 Kan. 628, 633-34, 913 P.2d 137 (1996). In that case, we said:
"In National Education Association v. Board of Education, 212 Kan. 741, 512 P.2d 426 (1973), this court cautioned against the use of federal decisions in public employment labor disputes. We noted the similarities and differences between collective negotiations by public employees under the Kansas Professional Negotiations Act, K.S.A. 72-5413 et seq., and collective bargaining in the private sector under the NLRA, stating:
`[W]e recognize the differences . . . between collective negotiations by public employees and `collective bargaining' as it is established in the private sector, in particular by the [NLRA]. Because of *416 such differences federal decisions cannot be regarded as controlling precedent, although some may have value in areas where the language and philosophy of the acts are analogous. See K.S.A. 1972 Supp. 75-4333(c), expressing this policy with respect to the [PEERA].' 212 Kan. at 749, 512 P.2d 426.
"The facts herein illustrate the wisdom of not relying on NLRA cases in deciding PEERA issues. Both the hearing officer and the district court struggled to try and make the single employer or joint employer theory fit. Neither of these theories is a comfortable fit because they are NLRA concepts." 259 Kan. at 633-34, 913 P.2d 137.
PEERA states in the section dealing with prohibited practices determinations: "In the application and construction of this section, fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment shall be regarded as binding or controlling precedent." K.S.A. 75-4333(e). In light of these distinctions, we find the NLRA and its progeny are not applicable to the issue in this case-whether PERB has the authority under PEERA to order monetary remedies.
As to the state law, the PNA is a state public-employer labor law governing school district employees. See K.S.A. 72-5413 et seq. Like PEERA, the PNA enumerates certain prohibited practices, which are submitted to the Secretary of Human Resources (Secretary). K.S.A. 72-5430; K.S.A. 72-5430a. But, as mentioned above, the PNA contains statutory language approximating what existed in PEERA prior to 1986. That language authorizes the Secretary generally to grant or deny the relief sought, stating:
"The secretary shall either dismiss the complaint or determine that a prohibited practice has been or is being committed, and shall enter a final order granting or denying in whole or in part the relief sought. Any action of the secretary pursuant to this subsection is subject to review and enforcement in accordance with the [KJRA]. Venue of the action for review is the judicial district where the principal offices of the pertinent board of education are located." (Emphasis added.) K.S.A. 72-5430a(b).
On its face, this is a broader statement of authority than what is granted to PERB today, although admittedly it does not expressly state the Secretary can award monetary damages. Nevertheless, PERB and AAUP argue the PNA is indistinguishable and point out this court upheld a monetary award in a PNA case, referring to the U.S.D. No. 279 decision. We examine this case more closely because PERB and AAUP so heavily rely upon it.
In U.S.D. No. 279, the school district's board of education and the Jewell-Randal Education Association were unable to agree on certain provisions in a collective bargaining agreement. The parties instituted mediation and factfinding impasse proceedings, as permitted by the PNA. During these proceedings, the school board made a counteroffer that was about $8,000 less than its previous offer. This reduced offer was designed to cover the school board's expenses associated with additional negotiations and $7,700 paid for the factfinding during mediation. The association rejected the offer, but the teachers ultimately entered into unilateral contracts with the school board at the lower dollar amount.
The association filed a prohibited practices complaint with the Secretary. The Secretary held the deduction was a prohibited practice because it interfered with the employee's right to representation, i.e., reducing the employee's potential pay by the negotiation expenses would discourage the employees from exercising their right to organize in the future. To remedy this violation, the school board was ordered to pay $7,700 to the association to reimburse the teachers.
The Court of Appeals held the order for reimbursement was improper because the teachers were not a party to the complaint and the Association lost its right to seek reimbursement on the teachers' behalf when they entered unilateral contracts with the school board. This court disagreed, citing the Secretary's "broad power" under K.S.A. *417 72-5430a to fashion relief it deemed appropriate, stating:
"We do not believe the legislature purposefully defined certain acts of prohibited practice, provided procedures to file a complaint of such acts, and granted the Secretary authority to determine whether or not the complained-of action constituted a prohibited practice without also granting the Secretary authority to remedy an infraction." 247 Kan. at 532, 802 P.2d 516.
This language obviously parallels PERB's and AAUP's position in this case, but it is unpersuasive because the Secretary had express statutory power to grant or deny the remedies sought by the parties. The question on appeal in U.S.D. No. 279 was whether there were any limitations on the Secretary's express power, given this broader language.
The school board argued K.S.A. 72-5430a provided such a broad grant of power to the Secretary that it amounted to an unlawful delegation of legislative authority. The U.S.D. No. 279 court held the Secretary's authority to award remedies under the PNA had to be construed in light of the entire act to determine whether there were limitations on the Secretary's power. Rather than restricting this review to the limitations on the Secretary's remedial powers, this court defined the issue as whether the PNA provided sufficient guidelines and limitations on the Secretary's authority to implement impasse procedures and determine prohibited practices claims. 247 Kan. at 534, 802 P.2d 516.
This court then held the Secretary exercises quasi-judicial functions, distinguishing the judicial powers to investigate, declare, and enforce liabilities from the legislature's powers to make new rules. Based on these quasi-judicial powers, the U.S.D. No. 279 court decided the broad grant of authority to "enter a final order granting or denying in whole or in part the relief sought" was not an unconstitutional delegation of legislative power. 247 Kan. at 534-35, 802 P.2d 516. Unfortunately, the U.S.D. No. 279 court did not articulate an answer to the more pertinent question raised by the school boardWhat limitations on the Secretary's power to enter awards, if any, can be drawn from the Secretary's quasi-judicial role?
Nonetheless, the U.S.D. No. 279 decision underscores the contrast between the statutory language in PEERA as it existed before the 1986 amendment and as it exists today without the provision to grant or deny in whole or in part the relief sought. In addition, and as the Court of Appeals noted in this case, this court has cautioned that there is no indication the legislature intended the PNA to have controlling significance with regard to PEERA or vice versa. Kansas Bd. of Regents v. Pittsburg State Univ. Chap. Of K-NEA, 233 Kan. 801, 818, 667 P.2d 306 (1983); Ft. Hays, 40 Kan.App.2d at 731, 195 P.3d 259. The U.S.D. No. 279 decision provides no supporting authority to find PERB possesses a power to impose monetary damages clearly arising from PEERA.
Finally, we need to consider a decision we brought to the parties' attention prior to oral arguments. In Woods v. Midwest Conveyor Co., 231 Kan. 763, 648 P.2d 234 (1982), superseded by statute on other grounds Kansas Human Rights Comm'n v. Dale, 25 Kan. App.2d 689, 694, 968 P.2d 692 (1998), this court held an agency must have express authority to order monetary damages and that a jury trial must be provided if the damages are legal in character.
In Woods, the plaintiff filed a complaint with the Kansas Commission on Civil Rights (KCCR), alleging the defendant employer was racially discriminating and had improperly terminated the plaintiff. At that time, the KCCR's statutory grant of powers specified various remedies it could order, including reinstatement with or without back pay, and issuing cease and desist orders, as well as a broader grant "to take such affirmative action . . . as, in the judgment of the hearing commissioners or hearing examiner, will effectuate the purposes of this act." (Emphasis added.) 231 Kan. at 768-69, 648 P.2d 234.
The hearing examiner agreed with plaintiff, ordering defendant to pay back wages and compensatory damages for pain, suffering, and humiliation. The employer appealed, arguing the statute authorizing the KCCR to enter remedial orders did not allow the compensatory damages. This court agreed with the employer. 231 Kan. at 770, *418 648 P.2d 234. We held: "Absent an express grant of power, an administrative agency has no power and may not determine damages and award a personal money judgment therefor." 231 Kan. at 770, 648 P.2d 234.
In drawing distinctions between U.S.D. 279 and Woods, we can see the common thread is the need for an express statutory provision tying the desired remedy to the agency's power to impose it. In U.S.D. No. 279, the Secretary had broad language authorizing "a final order granting or denying in whole or in part the relief sought." Such language is absent in PEERA. In Woods, the KCCR had express statutory authority to award back pay but not compensatory or punitive damages, so this court said it could not award these damages, even though the statute stated the KCCR could "effectuate the purposes of this act."
In this case, PERB can point to only general authority "to effectuate the purposes and provisions of [PEERA]," which is very closely aligned to the general language at issue in Woods. We find the prior case law from this court goes against the arguments made by AAUP and the Board.

CONCLUSION
PERB is devoid of any authority to impose a monetary award for prohibited practices violations under PEERA. Such power cannot be implied without more specific statutory language than presently exists. If PERB or AAUP believes a more effective public policy requires the Board to have available to it the power to impose a monetary remedy, they must take their arguments to the legislature to change the statute.
We hold PERB was not authorized to award monetary damages to Gaskill. All other issues articulated in the cross-appeal are rendered moot by this holding.
Judgment of the Court of Appeals reversing and remanding with directions to the district court is affirmed. Judgment of the district court is reversed and remanded with directions.
DAVIS, C.J., not participating.
JOHN E. SANDERS, District Judge, assigned.