FUSION, INC., Plaintiff,

v.

NEBRASKA ALUMINUM CASTINGS, INC. and George Hasley, Defendants.

No. 95–2366–JWL.

United States District Court, D. Kansas.

April 7, 1997.

**1394**

Donald W. Giffin, Spencer, Fane, Britt & Browne, Kansas City, MO, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, for plaintiff.

Arthur H. Stoup, Stephen W. Nichols, Arthur H. Stoup & Associates, Kansas City, MO, Thomas R. Rehorn, Kansas City, KS, John A. Christiansen, Blue Springs, MO, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case was tried to the court over 13 days from November 5, 1996, to November 27, 1996. Plaintiff Fusion, Inc. (Fusion) sued Nebraska Aluminum casting, Inc. (NAC) and its owner, George Hasley, for whom it served as manufacturer's representative, for breach of contract, seeking to recover unpaid commissions and statutory penalties. NAC defended its refusal to pay commissions and asserted counterclaims for breach of contract and breach of fiduciary duty. Both parties asserted a claim for attorney fees under the contract. By Memorandum and Order filed January 23, 1997 (Doc. 156), the court awarded judgment in favor of Fusion against NAC in the amount of $19,086.15.[1] The court concluded that Fusion's own material breach of contract justified NAC's termination of the

contractual relationship on August 10, 1995; accordingly, Fusion was only entitled to recover commissions relating to orders received by NAC before that date. The court further concluded that NAC was not entitled to damages on its counterclaims. *See Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 1997 WL 51227 (D.Kan. Jan.23, 1997).

The matter is presently before the court on Fusion's motion to amend the judgment and to reopen the evidence (Doc. 158) and Fusion's motion for an award of attorney fees under the contract (Doc. 159). For the reasons set forth below, the court denies the motion to amend or to reopen the evidence. The court grants in part the motion for fees and awards judgment against NAC in the amount of $10,000.

## I. Motion to Amend the Judgment

■ Fusion requests that portions of the court's conclusions of law be amended. Under rule 59, "in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Fed. R.Civ.P. 59(a). Motions under rule 59 are "addressed to the sound discretion of the trial court." *Bickford v. John E. Mitchell Co.*, 595 F.2d 540, 543 (10th Cir.1979).[2]

### A. Material Breach of Adequate Staff Provision

■ Fusion seeks to amend the portion of the order by which the court concluded that Fusion had materially breached the contract's "adequate staff" provision by the time NAC terminated the parties' contractual relationship on August 10, 1995. Fusion argues that the evidence presented at trial established that Fusion did provide an adequate staff after Bruce Payne left the company in April of 1995.

---

1. Judgment was entered only against NAC; the court concluded that Mr. Hasley was not personally liable to Fusion.

2. A motion under rule 59 must be filed "no later than 10 days after entry of the judgment." Fed. R.Civ.P. 59(b). Judgment was entered in this case on January 24, 1997. NAC asserts that Fusion's motion, filed on February 7, 1997, was untimely. NAC's argument is frivolous in light of Fed.R.Civ.P. 6(a), which provides that weekends are excluded in counting 10–day periods under the rules. Fusion's motion was timely filed.

The court disagrees with Fusion's characterization of the evidence on this point as "undisputed"; the court did not pull its conclusion out of thin air. As explained in the court's previous order, the weight of the evidence showed that by August 10 Fusion had not replaced Mr. Payne, although it had had ample time in which to do so. It was also apparent by that time that Fusion had no intention of replacing him. The weight of the evidence also established that Mr. Payne generated the great majority of customer activity with respect to NAC. Fusion's representation of NAC had not been exemplary before Mr. Payne's departure, and it was clear that the other representatives—Robert Clipsham, John Bugg, and Brandt Berger as a consultant—could not compensate for that loss, especially in light of Mr. Clipsham's and Mr. Bugg's lax or ineffective performance in the preceding years. *See Fusion*, 1997 WL 51227, at \*16.

The court rejects Fusion's further argument that it should not be held in breach because NAC did not consider its representation inadequate before August 10, 1995. In concluding that Fusion had not breached the "adequate staff" provision before Mr. Payne's departure, the court cited the evidence that NAC had found Fusion's representation sufficient to that time. *See id.* at \*15. Things changed upon Mr. Payne's leaving, however. Mr. Hasley made it clear to Fusion at that time that he was unhappy with the present relationship and wished to negotiate a new Sales Representation Agreement (SRA). He later proposed an agreement involving a smaller geographic area. The evidence firmly established that Mr. Hasley believed that Fusion could not cover the original territory without Mr. Payne.

Fusion next asserts that this breach by Fusion should not be deemed material—and so should not discharge NAC's further performance under the contract—because such result works a forfeiture in this case. Fusion cites the well-worn maxim that the law abhors a forfeiture.

■ The risk of forfeiture is merely one factor to be considered in determining whether a breach of contract is material. *See* Restatement (Second) of Contracts § 241

(1981); E. Allan Farnsworth, *Contracts* §§ 8.12, 8.16 (2d ed.1990). The court duly considered all relevant factors, including the extent to which NAC would be deprived of the benefit it reasonably expected under the contract and the extent to which NAC could be adequately compensated for that deprivation, in concluding that Fusion's breach was material. *See Fusion*, 1997 WL 51227, at \*16; *see also* Restatement (Second) of Contracts § 241 cmt. a (standard of materiality is necessarily imprecise and flexible); Farnsworth, *supra*, § 8.16 (materiality of breach is a question of fact, depending on the individual circumstances; extent to which breach will deprive injured party of the benefit justifiably expected is the "most significant" factor).

■ Moreover, the type of forfeiture contemplated by the Restatement and Farnsworth did not result here. In this context, a breach is less likely to be considered material if the breaching party has substantially performed or prepared in reliance on the contract and that performance or preparation cannot be salvaged. Restatement (Second) of Contracts § 241 cmt. d; Farnsworth, *supra*, § 8.12. Here, however, the contract was deemed divisible, and Fusion was allowed to recover commissions on orders received by NAC before August 10, 1995, in return for Fusion's own performance to that date. *Fusion*, 1997 WL 51227, at \*21. Thus, Fusion was compensated for its performance, and the risk of forfeiture does not prevent the court from concluding that Fusion's breach was material.

Fusion next argues that its material breach entitled NAC to suspend its performance under the contract, but not necessarily to terminate it. *See* Farnsworth, *supra*, § 8.18. The court rejects this argument. NAC had already suspended its performance once by withholding commissions, and it was clear by August 10 that Fusion did not intend to cure its deficient performance. Accordingly, NAC was justified in terminating the contractual relationship. *See id.*

## B. Entitlement to Attorney Fees

In its Memorandum and Order, the court concluded that because a judgment was

awarded in favor of Fusion, Fusion was the "prevailing party" under Kansas law, and was therefore entitled to recover its reasonable attorney fees under the SRA. *Fusion,* 1997 WL 51227, at *26. The court noted, however, that "any fee award in favor of Fusion is likely to be very small, given Fusion's limited success with respect to the relief it sought." *Id.*

Fusion seeks to amend the court's conclusions of law to delete the sentence about Fusion's likely award. The court addresses the parties' arguments concerning the proper fee award below in its discussion of Fusion's motion for fees. In light of its ruling on that motion, the court declines to retract its previous statement.

■ Fusion also asks the court to amend the order to make explicit its entitlement to fees as the prevailing party under the SRA. The court need not amend the judgment in this way, however. A prevailing party is entitled to recover its costs pursuant to Fed. R.Civ.P. 54(d)(1) and 28 U.S.C. § 1920; Fusion need only submit its bill of costs to the Clerk of the Court. *See* D. Kan. Rule 54.1. If NAC objects to those costs, the court will address such an award at that time. In light of the court's ruling on Fusion's motion for fees, however, the parties are reminded that the court has broad discretion in awarding costs and may limit or deny costs to a party only partially successful in the litigation. *See Howell Petroleum Corp. v. Samson Resources Co.,* 903 F.2d 778, 783 (10th Cir.1990) (district court was within its discretion in refusing to award costs to a party only partially successful).

## II. Motion to Reopen the Evidence

Fusion seeks to reopen the case to allow further evidence in support of its damage claim. Specifically, Fusion would offer evidence concerning orders received by NAC as of August 10, 1995. At trial, Fusion did not break down its damage evidence using that date.

Fusion argues that it should be allowed to present such evidence because the amount of damages suffered before that date had not been put at issue in the trial. Fusion notes that, in the pretrial order, NAC did not explicitly raise the defense that Fusion materially breached the contract on August 10.

The court concludes that Fusion is not entitled to reopen the evidence on this basis. NAC raised the defense that Fusion's material breach of the "adequate staff" provision excused its further performance. Throughout the trial, Fusion asserted that NAC did not terminate the contract until August 10. Fusion should reasonably have anticipated that, if NAC's conduct was found to be justified, August 10 could prove an important landmark in traversing the issue of damages. Moreover, NAC's examination during the deposition of Fusion's damages expert gave Fusion actual notice that NAC considered August 10 to be a possible cut-off point.

Fusion also contends that the SRA's damage provision was severable and divisible. It is not clear, however, how this argument relates to Fusion's motion, for such fact would not provide a basis for reopening the evidence. In addition, Fusion misapprehends the doctrine of divisibility, which involves corresponding pairs of part performances. *See* Farnsworth, *supra,* § 8.13; Restatement (Second) of Contracts § 240. In its prior order, the court concluded that Fusion's performance under the contract generally corresponded with NAC's obligation to pay commissions on orders received as a result of that performance. *Fusion,* 1997 WL 51227, at *21. The court also concluded that Fusion's breach of the "adequate staff" provision was material because it greatly affected Fusion's ability to represent NAC, *id.* at *16; thus, Fusion's compliance with the "adequate staff" provision and its entitlement to commissions under the SRA were inevitably linked. The SRA provision is not severable in the way that Fusion asserts.

The court denies Fusion's motion to reopen the evidence.

## III. Motion for Attorney Fees

Each party brought a claim for attorney fees under paragraph 14 of the SRA, which states: "In the event of litigation, the prevailing party may recover court costs and reasonable attorney fees." In its previous

order, the court concluded that Fusion was the "prevailing party" for purposes of the SRA, and it instructed the parties to comply with the procedures set forth in D. Kan. Rule 54.2 to facilitate an actual award of fees. *Fusion*, 1997 WL 51227, at *26. Plaintiff has since filed a motion for fees, a statement of consultation, and then a memorandum with supporting documentation, as required by the local rule. *See* D. Kan. Rule 54.2. Fusion seeks attorney fees and expenses totaling $264,080.18.

▮▮▮ Because the SRA is governed by Kansas law, *Fusion*, 1997 WL 51227, at *13 n. 1, "prevailing party" in the contract's attorney fee provision must be defined under Kansas law. *See Harris Market Research v. Marshall Marketing & Communications, Inc.*, 948 F.2d 1518, 1527 (10th Cir.1991). In *Harris*, each party to a contract was awarded damages against the other party for breach of the contract. *Id.* at 1521. In determining which party was the "prevailing party" under the contract's attorney fee provision, the Tenth Circuit concluded that Kansas followed the "net judgment rule", which states that "a prevailing party is the person who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Id.* (quoting *Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327 (1983)). There can be only one prevailing party and, thus, only one award of attorney fees. *Id.* at 1528. Under this analysis, then, because Fusion was awarded a monetary judgment in this case, Fusion was the prevailing party and is entitled to an award of attorney fees under paragraph 14 of the SRA.

▮▮▮ Because the district court is in the best position to assess the litigation, it exercises broad discretion in determining the amount of fees. *Id.* at 1527. A district court may award attorney fees in the same proportion as damages were assessed. *Id.* at 1528.

The Tenth Circuit also addressed the awarding of contractual attorney fees in *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors*, 834 F.2d 1533 (10th Cir.1987). In *Western States*, the court held that the district court should not have relied on the standards for awarding fees under federal civil rights statutes in

order to calculate a reasonable fee under a contractual fee provision. *Id.* at 1547. "Close scrutiny" of the hours expended for awards under the federal statutes is justified, the court stated, because of the statutes' purpose of enabling private parties to obtain legal help in seeking redress for statutory violations. *Id.* at 1548. Contractual attorney fee awards demand a different approach, however:

> In contrast, where contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain. Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms.

*Id.* (footnote omitted).

The court cautioned, however, that its ruling did not mean "that the trial court should simply award the full amount billed by the prevailing party's attorney;" rather, "the trial court has discretion to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." *Id.* The court summarized its holding as follows:

> In other words, the trial court's role is to determine if the claimed fees are inequitable or unreasonable. If so, the trial court has discretion to deny or reduce the fee award. However, the trial court is not responsible for independently calculating a "reasonable" fee.

*Id.* at 1549. Finally, the court stated that although the statutory fee standards were not to be used to compute a reasonable fee, those factors may be used by a court to assist in determining whether claimed fees are unreasonable or inequitable. *Id.* at 1550 (citing *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) as setting out statutory fee award factors).

Thus, the court need not engage in any "lodestar" analysis here. Instead, it must determine whether an award of $264,080.18 in favor of Fusion for attorney fees would be unreasonable or inequitable, and if it so de-

termines, reduce or deny the award accordingly.

 The court concludes that, in light of the results obtained by Fusion in this case, any substantial award of attorney fees would be unreasonable and inequitable. *See Ramos*, 713 F.2d at 556 (discussion of "results obtained" factor); *City of Wichita v. B G Products*, 252 Kan. 367, 845 P.2d 649 (1993) ("results obtained" is a factor in determining reasonableness of attorney fee award).

Fusion's success in this litigation was minimal. It sought over $420,000 for past commissions, but NAC successfully litigated its defense that Fusion's material breach of the contract discharged its own performance. The timing of that breach resulted in Fusion's recovery of $14,026 in commissions (plus $5,060.15 in interest and penalties); however, given Fusion's substantial claims, NAC emerged the "winner" in the everyday sense of the word.

Fusion would have the court give weight to its successful defense of NAC's counterclaims. Fusion argues that it was also the "prevailing party" on those claims, which success should be compensated under the SRA's fee provision. In this sense, Fusion suggests that the "net judgment rule" does not apply to this case because both sides did not recover damages that required "netting out"; instead, Fusion contends that it won on both sides of the ball, by scoring money damages for its claims and shutting out NAC on the counterclaims.

The court is not persuaded. The point of *Harris* and the "net judgment rule" is that the entire litigation is to be considered in determining a "prevailing party" for purposes of a contractual attorney fee provision. In fact, ignoring the rule would work against Fusion in this case because the court would then be free to award NAC attorney fees for its highly successful defense of Fusion's claims (which fees might even surpass those awarded to Fusion). Moreover, the claims for which NAC sought damages were also asserted as defenses to Fusion's claims for commissions; thus, the counterclaims injected only the issue of NAC's damages into the case.

A consideration of the entire case compels the conclusion that, although NAC did not recover any money damages, it was at least as successful in the litigation as Fusion, if not more so. Surely the parties, in agreeing to the attorney fee provision, did not intend that the more successful litigant should pay substantial fees to the party who prevailed only in the technical sense. Accordingly, anything more than a nominal award of fees to Fusion in this case would be unreasonable and inequitable.

The court will not completely deny Fusion an award of fees, however. NAC did withhold some commissions rightfully owed Fusion, which action entitled Fusion to some penalties and interest. The court therefore awards Fusion $10,000 in attorney fees and expenses, an amount fairly proportionate to Fusion's success in the litigation.[3]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Fusion's motion to amend the judgment or to reopen the evidence (Doc. 158) is denied.

**IT IS FURTHER ORDERED THAT** Fusion's motion for attorney fees is granted in part, and judgment is ordered against NAC in favor of Fusion in the amount of $10,000.

**IT IS SO ORDERED.**

---

**3.** In fact, as it turns out, this figure bears approximately the same relation to the amount of fees claimed by Fusion ($264,080.18) as that between the commissions recovered by Fusion ($14,026) and the amount it claimed ($420,097). *See Harris*, 948 F.2d at 1527.