(301 P.3d 709)
No. 107,613

CHRISTOPHER J. DAVIS, *Appellant*, v. WINNING STREAK SPORTS, LLC, *Appellee*.

678

 Opinion filed
March 15, 2013. 

*Lance Y. Kinzer*, of Schlagel Kinzer, LLC, of Olathe, for appellant.

*Matthew T. Geiger*, of Gaddy Geiger & Brown PC, of Kansas City, Missouri, for appellee.

Before MCANANY, P.J., BUSER and STANDRIDGE, JJ.

MCANANY, J.: This is the parties' second visit to our court following proceedings in the district court. Their dispute centered on the formation of a business called Winning Streak Sports, LLC (WSS), which apparently took over and continued a business operated by Christopher J. Davis and Winning Streak, Inc. (WSI).

*First Suit*

In 2006, WSI and Davis sued U.S. Hardwood Distributors, Inc. (Hardwood), Lauren Larson, and WSS for various claims, including breach of fiduciary duties. Davis also sought a declaratory judgment that he owned a 49% membership interest in WSS. The defendants denied that Davis had any membership interest in WSS and counterclaimed for damages for Davis' claimed overstatement of the net value of assets he sold to the new venture. They also asked the court to declare that Davis had no membership interest in WSS. The fiduciary duty claims were tried to a jury, and the question of Davis' membership in WSS was reserved for the court.

The jury returned its verdict finding that (1) Davis had been a member of WSS, (2) Davis never withdrew from membership in WSS, (3) Larson and Hardwood breached fiduciary duties they owed to Davis, and (4) Davis suffered $600,000 in damages from the acts of Larson. The jury awarded no punitive damages. On WSS's counterclaim for breach of contract, the jury awarded damages against Davis in the amount of $74,788.39. The jury awarded an equal amount against Davis and in favor of WSS, Hardwood, and Larson for negligent misrepresentation.

Following the jury trial, the district court took up the competing declaratory judgment claims and determined that Davis had a 0.96% membership interest in WSS.

*First Appeal*

Hardwood and Larson appealed the $600,000 jury verdict, and Davis cross-appealed the declaratory judgment ruling. Hardwood and Larson argued that the district court erred in instructing the jury on Davis' breach of fiduciary duty claims. They argued that there was no evidence to support Davis' breach of fiduciary duty claims because any such claims belonged to WSS and not Davis individually. Hardwood and Larson did not object to the court's instructions, possibly because they did not concede that Davis had any membership interest in WSS, which would have given him standing to pursue the fiduciary duty claims on behalf of the limited liability company (LLC). On appeal, we rejected this claim of error because evidence at trial supported all the elements necessary to support a favorable verdict for Davis.

On Davis' cross-appeal of the district court's declaratory judgment, we found that viewing the evidence in the light favoring the prevailing parties and leaving to the district court matters regarding the credibility of the witnesses, there was substantial evidence to support the district court's finding that Davis' membership interest in WSS was only 0.96%. Our Supreme Court denied further review. See *Winning Streak, Inc. v. Winning Streak Sports, LLC*, No. 100,725, 2010 WL 348272 (Kan. App.) (unpublished opinion), *rev. denied* 291 Kan. 918 (2010).

*Current Suit*

Davis then brought this current action in which he seeks indemnification under K.S.A. 17-7670(b) for his attorney fees incurred in the original action against WSS. The parties filed cross-motions for summary judgment. The district court entered summary judgment in favor of WSS, finding that Davis was only "nominally successful" in his claim against WSS and, therefore, was not a prevailing party under K.S.A. 17-7670(b) and was not entitled to attorney fees.

*Current Appeal*

Davis appeals. The controlling statute for this appeal is K.S.A. 17-7670, which provides:

"(a) Subject to such standards and restrictions, if any, as are set forth in its operating agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever.

"(b) To the extent that a member, manager, officer, employee or agent has been successful on the merits or otherwise or the defenses of any action, suits or proceeding, or in defense of any issue or matter therein, such director, officer, employee or agent shall be indemnified against expenses actually and reasonably incurred by such person in connection therewith, including attorney fees."

There is no contention on appeal that subsection (a) of the statute applies. Davis' overarching claim on appeal is that the district court erred in entering summary judgment in WSS's favor. He argues that the uncontroverted facts establish he was "successful" in his litigation against WSS, and thus, entitled to an award of attorney fees under K.S.A. 17-7670(b). WSS argues that Davis was not the prevailing party, and thus, not entitled to fees because he sought to establish that he had a 49% interest in WSS and the district court found that his interest was only 0.96% membership interest.

*Standard of Review*

This matter comes to us following the district court's entry of summary judgment in favor of WSS. The parties and their counsel are well acquainted with the standards by which the district court considers a summary judgment motion. We apply those same standards de novo on appeal. See *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

The interpretation of K.S.A. 17-7670(b) is central to our resolution of this appeal. The interpretation of a statute is a question of law over which we have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). In examining K.S.A. 17-7670(b), we are mindful of the fundamental consideration that the intent of the legislature governs if that intent can be discovered. See *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607,

214 P.3d 676 (2009). In attempting to discover the legislature's intent, we examine the language of the statute, giving common words their common and ordinary meanings. *Padron v. Lopez,* 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When the language of the statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and do not read into the statute something that is not there. *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Nevertheless, we can correct clerical or inadvertent errors in terminology if the intent of the legislature is plain and unmistakable. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs,* 290 Kan. 446, 464-65, 228 P.3d 403 (2010).

Once we establish the meaning of K.S.A. 17-7670(b) and identify the class of persons entitled to relief under its provisions, we must examine the uncontroverted facts to determine whether Davis, as a matter of law, falls within the class. If he does, he is only entitled to partial summary judgment because the facts upon which to determine the proper amount of an award of fees are unresolved. In that case, the matter must go back to the district court for further proceedings on the proper amount that should be awarded. If Davis does not fall within the class of persons entitled to indemnity by WSS under K.S.A. 17-7670(b), then resolution becomes simpler: WSS is then entitled to judgment as a matter of law.

*Discussion*

In arguing their positions before the district court, and again before us on appeal, the parties focused on the question of who was the successful or prevailing party in the case. WSS argued in oral argument before us that there can only be one prevailing party. Davis cannot be considered the prevailing party because he lost on the issue of the extent of his interest in WSS. He claimed a 49% interest in WSS, but the court determined in the declaratory judgment action that his interest was only 0.96%. The defendants also prevailed on their counterclaims.

On the other hand, Davis argued that he did prevail because he succeeded in the key determination that he had an interest in WSS. The defendants had contended that Davis had no interest what-

soever. Further, Davis obtained a $600,000 judgment in the jury trial on his breach of fiduciary duty claims against Larson and Hardwood.

The parties argue that, under the statute, whether there is indemnification for fees depends on whether the party making a claim for indemnity "has been successful on the merits or otherwise."

The legislature easily could have provided for the right to indemnity *if* "a member . . . has been successful on the merits or otherwise." See K.S.A. 17-7670(b). But that is not what the legislature said. It provided a right to indemnity *to the extent that* "a member . . . has been successful on the merits or otherwise." K.S.A. 17-7670(b). Applying the fundamental rules of statutory interpretation, we give ordinary words their ordinary meaning. What the legislature enacted was not an indemnity right reserved for only the wholly successful litigant. The statute in plain and simple language requires indemnity *to the extent that* a litigant prevails.

There is no doubt that Davis prevailed, at least in part, in this litigation. The proceedings in the district court were divided between the membership issue, which was the subject of the declaratory judgment action to be resolved by the court, and the breach of fiduciary duty claims, which were resolved by the jury.

In the declaratory judgment action the court determined that Davis' interest in WSS was only 0.96%, not the 49% he claimed. Many of the defendants' arguments carried the day. Nevertheless, the jury determined that Davis was a member of WSS, a fact that the defendants hotly disputed. Being recognized as a member of WSS, though having only a miniscule interest, gave Davis certain rights and privileges as a member that otherwise would have been denied to him.

In the jury trial regarding Davis' breach of fiduciary duty claims, he obtained a $600,000 verdict. But he was not wholly successful in that action. On WSS's counterclaim for breach of contract, the jury awarded damages against Davis in the amount of $74,788.39. The jury awarded an equal amount against Davis and in favor of WSS, Hardwood, and Larson for negligent misrepresentation.

The indemnity provision in K.S.A. 17-7670(b) is mandatory. *To the extent that* the party has been successful, indemnity *shall be* provided. Davis is entitled to indemnity to the extent that he was successful.

Davis' indemnity claim is for the attorney fees he incurred in the original action. These summary judgment proceedings cut short the inquiry into what would be a reasonable fee under the circumstances. While the language of K.S.A. 17-7670(b) is mandatory with respect to indemnity for fees, the amount of fees awarded rests within the sound discretion of the district court. See *Unruh v. Purina Mills*, 289 Kan. at 1200. In making its determination of the amount of fees for which WSS must indemnify Davis, the district court must consider not only the extent to which Davis succeeded in the original suit, but also the factors set forth in Rule 1.5(a) (2012 Kan. Ct. R. Annot. 492) of the Kansas Rules of Professional Conduct which are used in deciding the reasonableness of an attorney fee request. See *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006).

Our analysis is consistent with that employed by the Delaware Court of Chancery in *May v. Bigmar, Inc.*, 838 A.2d 285 (Del. Ch. 2003). Delaware has a statute, Del. Code Ann. tit. 8, § 145(c), which is markedly similar to K.S.A. 17-7670(b). May was a former officer and director of the defendant Bigmar. She contended that a meeting of the board of directors had not been validly convened. She also contended that the written consents removing a number of directors from the board were valid. The vice chancellor hearing the case determined that the board meeting had not been properly convened and that the written consents removing the various directors were not valid consents. Thus, May prevailed on one issue but not the other. As a result of the unfavorable ruling on the directors issue, May resigned from Bigmar. The court stated:

"The right to indemnification for corporate officers is well established in Delaware. This right, however, is not a 'blank check for corporate officials' and the court must determine the extent of indemnification in light of the results of the litigation. The idea that a corporate officer should only be indemnified in an amount that reflects her limited success is supported by Section 145 jurisprudence. In this case, May was successful on the claim relating to the validity of the

November 16-18 meeting, but she lost the claim that she removed directors by written consent. Plaintiff seeks an indemnification award of $588,273.32, an amount that she says represents the cost of litigating whether the November 16-18 meeting was validly held.

"The touchstone for awarding fees in an indemnification action is reasonableness. In a partial indemnification case, the burden is on the plaintiff to submit 'a good faith estimate of expenses incurred' relating to the indemnifiable claim. May is entitled to partial indemnification to the extent that she can prove that the expenses were 'actually and reasonably' incurred in relation to the November 16-18 meeting claim." 838 A.2d at 288-89.

We commend to the district court on remand the discussion in *May* regarding the calculation of indemnifiable fees in a case such as this. The factors to be considered in assessing reasonable attorney fees under the Delaware Lawyers' Rules of Professional Conduct are the same factors found in Rule 1.5 of the Kansas Rules of Professional Conduct. See *Mahani v. EDIX Media Group, Inc.*, 935 A.2d 242, 245-46 (Del. 2007).

In concluding our discussion of this initial point, we need to discuss the cases cited by WSS in its appellate brief.

WSS cites *Harris Market Research v. Marshall Marketing*, 948 F.2d 1518, 1527-28 (10th Cir. 1991), and a slew of other cases to support the proposition that we should apply the abuse of discretion standard in reviewing the district court's ruling on indemnification for attorney fees. Those cases apply when it is discretionary with the court whether, and how much, fees should be awarded. Here, the language of K.S.A. 17-7670(b) is mandatory, not discretionary. So the threshold "whether" issue is not left to the discretion of the district court. Only the "how much" issue remains discretionary with the district court, and that issue has yet to be addressed by the district court.

WSS cites *C.W. Beamgard Co. v. Luedke*, 17 Kan. App. 2d 654, 656, 842 P.2d 317 (1992), as an example in which "the plaintiff was not a 'successful appellee' where the court reduced a small claims judgment by 60 percent." The issue was whether Beamgard was entitled to an award of attorney fees under K.S.A. 1991 Supp. 61-2709(a), which stated that an appellee that successfully defends an appeal from small claims proceedings is entitled to reasonable attorney fees incurred on appeal. Unlike K.S.A. 61-2709(a), the in-

demnity provision in K.S.A. 17-7670(b) now before us cuts the all-or-nothing Gordian knot by a determination of whether a party was successful by providing for indemnification *to the extent that* a member succeeds. The issue then becomes not whether, but how much.

We also note *Fusion Inc. v. Nebraska Aluminum Castings, Inc.*, 962 F. Supp. 1393 (D. Kan. 1977), which was considered by the district court. There, applying Kansas law, the district court applied the net judgment rule in considering who the prevailing party was and in apportioning the award of attorney fees based upon the extent of the prevailing party's success. *Fusion* was analyzed under a different rubric: whether the party claiming fees was *the* prevailing party. Yet approaching the issue from this different perspective still led the court to an analysis based on the extent that the fee-claiming party was successful in the litigation. Here, we have an explicit legislative directive that a party be indemnified for expenses *to the extent* that party is successful.

### WSS's Other Arguments

Because the district court determined that Davis was not a successful party and not entitled to indemnity, the court did not reach other issues raised by WSS. Because we have determined so far that Davis is entitled to indemnity under K.S.A. 17-7670(b) *to the extent that* he succeeded, we must address WSS's other contentions.

### • No Operating Agreement

WSS argues that because there was no operating agreement Davis cannot seek relief under K.S.A. 17-7670(b). It is undisputed that there was no WSS operating agreement that provided indemnification for fees.

K.S.A. 17-7670(a) permits, but does not require, an LLC operating agreement to provide indemnity for its members. The statute provides that "a limited liability company may, and shall have the power to, indemnify and hold harmless any member." K.S.A. 17-7670(a). WSS contends "the requirement of an operating agreement must extend to parts (a) <u>and</u> (b) . . . [o]therwise, part (b) is

an inflexible mandate that erases the discretion granted by part (a)."

WSS relies on *In re ALH Holdings LLC*, 675 F. Supp. 2d 462 (D. Del. 2009), and *Senior Tour Players v. Golftown*, 853 A.2d 124 (Del. Ch. 2004). Neither appears to advance WSS's cause.

In *ALH Holdings*, there was an operating agreement, but it did not provide for indemnification. After denying indemnification based on the terms of the operating agreement, the district court addressed an alternative claim that the plaintiffs raised under Del. Code Ann. tit. 8, § 145(c). That is the statute that is substantially similar to K.S.A. 17-7670(b). The district court denied that claim because "[t]he challenged transactions resulted from decisions made by the Supervisory Board, not from any actions taken by a director of ALH's subsidiary companies." 675 F. Supp. 2d at 484-85.

The court in *ALH Holdings* had the opportunity to expressly hold that indemnification is not permissible unless it is called for in the operating agreement. It declined to do so, instead noting that invoking the rights under Del. Code Ann. tit. 8, § 145(c) would be inappropriate because of the circumstances of the parties' transaction. Thus, the court applied the two statutory indemnity provisions independently of one another.

In *Senior Tour Players*, which also deals with Del. Code Ann. tit. 6, § 18-108, the parties had an operating agreement that required the company to indemnify and advance legal fees to the extent allowed by law. The court did not discuss Del. Code Ann. tit. 8, § 145(c), Delaware's statute comparable to K.S.A. 17-7670(b), but addresses only the law applicable when an operating agreement is already in place.

Finally, we need only turn to the plain and unambiguous language of the statute to resolve this issue. When the language of a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Double M Constr.*, 288 Kan. at 271-72.

Under K.S.A. 17-7670(a) an LLC is permitted, but not obligated, to indemnify a member against "any and all" claims. This is without

regard to the merits of the claim or the rightness of the member's position. On the other hand, under K.S.A. 17-7670(b) the LLC is *required* to provide indemnity to the extent that the member has been successful. The fact that indemnity is required when the member is successful, in spite of the lack of an indemnity provision in an operating agreement, does not undermine the LLC's discretionary power to provide indemnity to a member with regard to all claims, regardless of their merit.

We conclude that the lack of an operating agreement does not render K.S.A. 17-7670(b) inoperative.

- *Unconstitutionally Vague*

WSS next argues that K.S.A. 17-7670 is unconstitutionally vague because subsection (b) "does not clearly define who is entitled to indemnity."

A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the duty to do so. *Rural Water District No. 2 v. City of Louisburg*, 288 Kan. 811, 817, 207 P.3d 1055 (2009).

As noted earlier, the fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. at 607. If the intent of the legislature is plain and unmistakable, we are permitted to correct clerical or inadvertent errors in terminology. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. at 464-65.

WSS's argument is based on an obvious clerical error in the drafting of K.S.A. 17-7670(b). The statute reads:

"(b) To the extent that a *member, manager, officer, employee or agent* has been successful on the merits or otherwise or the defenses of any action, suits or proceeding, or in defense of any issue or matter therein, such *director, officer, employee or agent* shall be indemnified against expenses actually and reasonably incurred by such person in connection therewith, including attorney fees." (Emphasis added.) K.S.A. 17-7670(b).

WSS points out directors do not exist in an LLC and argues that the legislature "confused corporate participants with LLC partici-

pants." But considering the statute in its entirety, including subsection (a), which permits indemnity by agreement of LLC members for any and all claims, we are satisfied that the legislature intended in K.S.A. 17-7670(b) to require indemnity for LLC members to the extent that they have been successful in any suit or proceeding contemplated by the statute.

In upholding our duty to resolve all doubts in favor of this statute's validity if there is any reasonable way to do so, and in exercising our power to correct clerical or inadvertent errors in terminology when the intent of the legislature is plain and unmistakable, we read K.S.A. 17-7670(b) to include LLC's members in the class of persons entitled to indemnity to the extent they are successful in litigation.

We find no merit in WSS's constitutional challenge to the statute.

- *Claims Personal To Davis*

Finally, WSS argues that Davis is precluded from recovery under K.S.A. 17-7670(b) because the statute "is not designed to reimburse Davis for the prosecution of his personal ownership claims." WSS contends that Davis' suit advanced only his private interest; therefore, he should not be entitled to indemnity as a member of WSS.

WSS relies on *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578 (Del. Ch. 1994), which is a whistleblower case in which the plaintiff was fired from her position as in-house counsel to E.F. Hutton Trust Company after disclosing to the Hutton Trust board of directors what she thought was inappropriate use of Hutton Trust by its parent company, E.F. Hutton Group, Inc. The plaintiff sought damages for defamation, breach of employment contract, and interference with her employment contract. She also sought to assert the rights of E.F. Hutton Group's shareholders from an unrelated merger.

The court held that Shearin was not entitled to be indemnified for her litigation expenses because "permissible indemnification claims will include those deriving from lawsuits brought by directors, officers, agents, etc., only insofar as the suit was brought as a

part of the employee's duties to the corporation and its shareholders." 652 A.2d at 594. Shearin did not meet that qualification because she was no longer an employee at Hutton Trust and no longer had any responsibilities to the company when she filed suit.

The circumstances here are different from those in *Shearin*. In *Shearin*, the plaintiff sued her former company after she was already disassociated from it. Davis' contention was that he was a member in WSS *at the time of his suit*, and he sought to invoke his rights as a member.

WSS argues that Davis' "litigation provided no benefit to the corporation" and therefore he is not entitled to be indemnified for his legal expenses. WSS does not provide any support for the notion that indemnity is not required when the underlying action benefits both the LLC and the individual plaintiff.

At the jury trial in the first suit Davis claimed Larson and Hardwood engaged in improper conduct that directly affected Davis' claim of membership in WSS. He claimed that Hardwood and Larson backdated stock certificates that inaccurately recorded that Hardwood and Larson were members of WSS but Davis was not. Davis claimed Hardwood and Larson backdated meeting minutes, resolutions, and operating agreements in order to improperly defeat his claim of membership. Davis made other claims that he alleged affected him personally but also dealt with the integrity of the LLC's books and records. The jury returned a general verdict in favor of Davis, so we have no basis for determining on which of the various claims the jury based its verdict. But in the first appeal we determined that under our standard of review, there was substantial evidence that Davis suffered a personal loss to support a jury verdict in his favor. Nevertheless, it is apparent that the issues Davis brought forth also benefited WSS's interest in being able to properly identify its members and to determine what interest they held in the LLC. Davis' suit also brought to light irregularities in essential books and records of the company.

As Davis points out, his efforts to gain recognition as a member of WSS were closely tied to the alleged improper conduct of Hardwood and Larson in conducting the business of WSS and main-

taining WSS's books and records. We cannot conclude, as WSS argues, that Davis' suit advanced only his private interest.

WSS's motion for summary judgment should be denied. Davis is entitled to partial summary judgment on his claim for indemnification for attorney fees. But before a final judgment for indemnification can be entered, the district court must exercise its discretion in establishing an amount of recoverable attorney fees, which is reasonable under the circumstances.

Reversed and remanded for further proceedings.